The **ST. PAUL INSURANCE COMPANY, Appellant,**

v.

**Willie Frank WALLER, Appellee.**

Supreme Court of Tennessee.

June 16, 1975.

Robert M. Burton, Memphis, for appellant.

Walter Buford, Buford & Deal, Memphis, for appellee.

## OPINION

FONES, Chief Justice.

Appellant is the workmen's compensation carrier for Thompson Non-ferrous Foundary, Inc., hereinafter employer. Insurance company appeals from the decree of the trial court awarding temporary total disability, fifteen (15%) percent permanent partial disability and medical and hospital expenses, which the learned trial judge found resulted from a compensable injury incurred while performing heavy lifting.

Insurance company's assignments of error are as follows:

"(1) There is no material evidence to support the judgment of the Trial Court.

(2) The Trial Court erred in holding that the Plaintiff gave proper notice of the alleged accidental injuries pursuant to 50–1001 and 50–1002, Tennessee Code Annotated.

(3) The Trial Court erred in holding that the Plaintiff sustained an accidental injury so as to be compensable under the Workmen's Compensation Act of Tennessee on February 15, 1973 and awarding benefits thereunder."

At the time of the trial employee was forty (40) years old. He had a fourth or fifth grade education. He first worked for employer from June, 1966, until April, 1970. He resumed employment with this employer in April, 1972. He worked as a printing mold operator and his duties required lifting molds weighing two hundred fifty (250) pounds and more.

Employee testified that he first hurt his back in 1966 or 1967. The records in the office of Dr. John T. Outlan, a company doctor, reveal that on March 5, 1969, employee was treated for a back injury caused by lifting while at work on February 26, 1969, according to the history taken by Dr. Outlan's brother. Employee terminated his employment on April 30, 1970, because the condition of his back was such that he could not perform the heavy lifting. As stated, he returned to work for Thompson Non-ferrous Foundary, Inc., in April, 1972. On November 21, 1972, employee was assisting a co-worker lift molds said to weigh about four hundred (400) pounds when he felt a sharp pain, "—like needles was sticking me

around in my stomach and my back." He had difficulty straightening up and testified that he "reported" this incident.

On November 28, 1972, a similar incident occurred that he described as causing a catch in his back and a burning in his groin. He reported that incident to Mr. Jack and was sent to Dr. Outlan for treatment.

Dr. Outlan made a diagnosis of right inguinal hernia and referred employee to Dr. Pridgen. Dr. Pridgen performed a surgical repair of his hernia and released him to return to work on Monday, February 12, 1973. Temporary total disability and medical expenses resulting from the hernia operation were paid.

Employee described what occurred upon returning to work as follows:

Q. When you went back to work on February 12th, 1973, what did they have you do?

A. My job that I was on was operating a machine; so when I got back to work—they put me back to work, they took my job from me and gave it to another man and told me that if Mr. Son didn't operate the machine that he wouldn't have anything to do, and they put me back in the back pushing the same heavy loads I had already done been hurt on once before, and I went back and tried to do it' so I did it for about two or three days around there.

Q. You worked from February 12th to February 15th, 1973?

A. Yes.

Q. What happened to you on February 15th, 1973?

A. That is when I had to go up and tell Mr.—talk to Mr. Jack about my injuries again, and he told me—these are the words he told me. He said, 'Willie, there is nothing light around here that I have got for you to do'; so I asked this: 'What about my job back there, the one I was—I can handle this machine, but that work back there is too hard for me, I can't do it,' and I told him I had pains in my back then, and he said, 'Well, there is nothing around here light and if you can't do this work, you are fired.' because I couldn't do the heavy work, and I told him I needed to go back to the machine and he said, 'Go and talk to Mr. Dave about it,' and I went and talked to Mr. Dave about it, and Mr. Dave told me to go and talk to the insurance people, and I went and talked to the insurance people and they told me to go back to the plant and talk to the people at the plant about it, and I talked to them and nobody wanted me to go back to the doctor. They said, 'If you go to the doctor, you can go to the doctor on your own' and that is what I did.

* * * * * *

Q. And you say you were pushing a heavy load and your back was hurting you again, is that correct?

A. Yes, sir I could hardly straighten up.

Q. What?

A. I could hardly straighten up. I even told them about it. I couldn't straighten up.

The record shows that employee had been treated by Dr. Outlan on a number of occasions for unrelated work injuries. Employee went to Dr. Outlan for treatment on February 16, 1973. Dr. Outlan's examination revealed that the hernia operation incision was still swollen and tender and he recommended that employee do light work for two (2) or three (3) weeks. Employee returned to see Dr. Outlan on February 21, 22, and 26.

Thereafter employee was referred by his attorney to Dr. Stanley Patterson. On his first visit to Dr. Patterson on March 5, 1973, he complained principally of pain in the groin and low back, giving a history reasonably compatible with the foregoing recitation of events. Dr. Patterson admitted him

to the hospital in May of 1973, for ten (10) days and diagnosed his condition as a lumbar disc syndrome. Employee was again admitted to the hospital in September, 1973, and during his stay a lumbar myelogram was performed that did not show any abnormality. It was Dr. Patterson's opinion that surgery was not warranted. He remained under Dr. Patterson's treatment until December 4, 1973. Dr. Patterson reported him improved at that time and was of the opinion that he could probably return to work around the first of January. His final diagnosis was lumbar disc syndrome and he expressed the opinion that employee had a permanent partial disability of ten (10) to fifteen (15) percent and on the question of causation, that his condition was compatible with straining and lifting heavy objects.

Insurance company denies any liability for employee's back condition. It is the company's contention that employee did not sustain any accidental injury to his back in November, 1972, or in February, 1973. It asserts that employee's back trouble had its inception in 1967 or 1968 and is "the same old back trouble" which cannot be related to any subsequent specific incident.

In the brief on behalf of insurance company counsel has selected from the record, testimony of employee and the doctors that lend support to that position. However, when the entire record is read there is material evidence to support the findings of the trial judge. On the issue of liability for a compensable injury the trial judge found, inter alia, as follows:

"It is the position of the Defendant that this is a condition which the Petitioner has suffered over a long period of time and which cannot be related to any specific incident, and, therefore, it is the position of the Defendant that the Petitioner has not sustained an accidental injury arising out of and in the course and scope of his employment under the Workmen's Compensation Law.

The Court has considered all of the matter and the Court is of the opinion that the Petitioner has sustained a compensable injury under the Workmen's Compensation Law, arising out of and in the course and scope of his employment, that the Court finds as a fact, based on all of the proof, that said injury occurred on February 15th, 1973, at which time the Petitioner's condition reached the point that he could no longer return to gainful employment.

Now, under the Workmen's Compensation Act, an employer takes an employee in the condition in which he finds him.

The proof is undisputed in this record that this Petitioner has suffered from alleged back complaints since 1966, with the records indicating from Doctor Outlan, the company doctor, that in 1969 he treated him for a back injury arising out of his employment. The record so indicates, and in 1970, it is undisputed, it was brought out by the Defendant that the Petitioner left the employment of the Defendant because of the fact that his back was bothering him. However, with this knowledge in 1972, some two years after the Petitioner had left the employment because of his back, the Defendant rehired him with knowledge of his back condition; so based on all the evidence in this cause, the Court finds that the Petitioner has sustained a compensable injury under the Workmen's Compensation Act of Tennessee, and accordingly so holds that the Defendant is liable to the Petitioner for benefits under the Workmen's Compensation Act."

We are aligned with the majority of jurisdiction in allowing compensation for conditions that do not occur instantaneously as the result of one accident, but develop gradually over varying periods of time, resulting from repeated work related incidents.

*Brown Shoe Company v. Reed*, 209 Tenn. 106, 350 S.W.2d 65 (1961) contains an elaborate exposition of the gradual injury doctrine in Workmen's Compensation law.

Therein, the questions of "injury by accident" and the time of accrual of the cause of action for the purpose of notice and the statute of limitations, are thoroughly discussed.

*Central Motor Express, Inc. v. Burney,* 214 Tenn. 118, 377 S.W.2d 947 (1964), involved a series of work related incidents of heavy lifting, culminating in a disc operation. The trial judge first held that Burney had not suffered an accidental injury, but after *Reed* was called to his attention compensation was awarded and the award sustained on appeal.

Burney had worked for defendant as a freight loader for seven (7) years. In August, 1961, he sustained a compensable injury to his back, for which he was paid. Suffering no permanent disability he returned to work in September, 1961. In late May, 1962, he had pain in his low back and legs upon lifting anything heavy. Two weeks later, on April 2, 1962, he reported to his employer that his legs were going numb on him and he was sent to the company doctor for examination. The company doctor could find nothing wrong but suggested that he see another physician. A neurosurgeon diagnosed his condition as a herniated disc and operated. On May 1, 1962, as soon as he was able to leave the hospital, Burney consulted an attorney who gave notice to defendant of his injury and claim for compensation.

In said case, defendant insisted that Burney did not suffer an accidental injury but rather a recurrence of an old back injury and that the alleged accident was not traceable to a definite time and place. It also appears that the issue of timely notice was raised. The same contentions are made by insurance company in the instant case.

All of these questions are foreclosed by the decisions of this court in *Reed* and *Burney.* The contention that there is distinguishing significance in the fact that Burney's condition was diagnosed as a ruptured disc whereas in the case at bar the

diagnosis was merely lumbar disc syndrome, is patently without merit.

In response to the question of notice raised herein, it is sufficient to say that there is material evidence to support the finding of the trial judge that a work related back injury was sustained by Waller on February 15, 1973, and that Waller's report to Mr. Jack quoted herein provided ample notice to the employer.

██ It is suggested that there should be no liability for the medical expenses because employee was treated by a doctor selected by his attorney.

After the trial judge's findings were announced in open court, counsel for employer insisted that it was undisputed that Waller's attorney sent him to the doctor without consulting the company and that the cases all hold, in such circumstance, that there is no liability for medical expenses. In response the court said:

"The record is clear that by letter from the attorney shortly after this injury occurred, medical expenses were requested on behalf of the company and refused."

It is insisted in this court that the record does not contain the letter referred to by the trial judge.

Apparently the letter that the trial judge had in mind was a letter written by employee's attorney to Dr. Outlan, dated February 21, 1973, and read, in part, during the deposition of Dr. Outlan. The letter stated, among other things, that Mr. Waller had been released from the care of Dr. Pridgen to return to work; that he could not perform the work and upon so informing his employer, he was replaced and informed that they would not be responsible for any further medical care.

Counsel for the insurance company objected and stated that at the trial, the court would be asked to strike the letter. This was not done.

The letter was not written to the employer and is without probative value. But, the

insistence that the trial judge's apparent reliance on it constitutes grievous error is misplaced.

Employee, Waller's positive, direct and undisputed, testimony conveys the same meaning and import as the letter. Having informed him that no further medical care would be furnished by the company, the duty to "consult" employer before selecting his own doctor, no longer existed, under the facts of this case. See *Consolidated Coal Company v. Pride*, 224 Tenn. 188, 452 S.W.2d 349 (1970); *Proctor and Gamble v. West*, 203 Tenn. 138, 310 S.W.2d 175 (1957); and unpublished opinion in *U. S. Fidelity and Guaranty, et al. v. Young*, released the 9th day of June, 1975, middle division.

The decree of the trial court is affirmed. The costs are adjudged against insurance company.

COOPER, HENRY, BROCK and HARBISON, JJ., concur.