IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

FOR PUBLICATION

Filed: February 24, 1997

WILLIAM R. REESER, JR.,    )

    )

    Plaintiff-Appellee,    )    OVERTON CIRCUIT

    )

v.    )    NO. 01S01-9603-CV-00042

    )

YELLOW FREIGHT SYSTEM,    )

 INC.,    )    Hon. Billy Joe White,

    )    Chancellor

    Defendant-Appellant.    )

**FILED**

**February 24, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

For Plaintiff-Appellee:    For Defendant-Appellant:

Kelly R. Williams    Stephen K. Beard
Livingston, TN    Stewart, Estes & Donnell
    Nashville, TN

# O P I N I O N

AFFIRMED    DROWOTA, J.

In this workers' compensation action, the employer, Yellow Freight System, Inc., defendant-appellant, has appealed from a judgment of the Circuit Court of Overton County finding that the employee, William R. Reeser, Jr., plaintiff-appellee, is permanently and totally disabled as a result of a stroke. The trial court found that conditions of the employment - stress associated with driving a truck through an ice storm - precipitated the employee's stroke. The sole issue on appeal is the correctness of that finding.[1] After carefully examining the record and the relevant authorities, we affirm the judgment of the trial court.

The employee, who was sixty-three years old at the time of his injury, worked as a long distance truck driver for the employer. He had worked in this capacity for the employer since 1989. On February 9, 1994, the employee was required to drive a truck from Nashville to St. Louis, Missouri, for the employer. On February 10, 1994, he returned to Nashville during a severe ice storm.[2] The employer canceled all trips by its drivers on February 10 because of the ice, but the employee was already on the return leg of his trip. Thus, the employee was on the road when the storm was at its worst.

On February 11, 1994, the employer resumed a full schedule of trips between Nashville and Memphis. On that date, the employee left Nashville at approximately 3:45 p.m. and traveled to Memphis. He arrived in Memphis at approximately 7:40 p.m. after the storm had ended. However, while exiting

[1]This case was transferred to the entire Supreme Court for review and disposition by Order dated November 26, 1996.

[2]According to the trial court, "West Tennessee was struck by probably the worst ice storm in history" on February 9 and 10, 1994.

the interstate minutes from his destination, the employee lost control of his truck, traveled across six lanes of traffic, ran through a guardrail, and went down an embankment. When police arrived on the scene, they found the employee lying semi-conscious on the floorboard of his truck, with bruises and cuts. The employee was taken to a nearby hospital, and was diagnosed as having had a stroke. The stroke has left the employee totally disabled. He cannot speak, has substantial paralysis, seizures, and cannot take care of any personal needs. He requires care twenty-four hours a day. The employee cannot recall anything about the accident.

Following the accident, the employee was treated by Dr. Michael Deshazo, a neurologist who diagnosed the stroke. Dr. Deshazo determined that the employee had a complete blockage of an artery leading to his brain, which interrupted the flow of blood to the brain. This led to a "cerebrovascular thrombotic occlusive event," or a stroke. On the issue of causation, Dr. Deshazo testified that the stress of driving a truck through an area that had just experienced a major ice storm "could have played a role in precipitating" the stroke. Dr. Deshazo opined that driving a truck was a stressful occupation, made more so during times of hazardous driving. Dr. Deshazo conceded, however, that the stroke could have occurred regardless of any stress the employee may have experienced while driving, particularly since the employee suffered from pre-existing coronary artery disease.

Dr. William Quarles, the employee's family physician since 1966, also treated the employee. Dr. Quarles testified similarly to Dr. Deshazo. In

response to a hypothetical question which asked him to assume that the employee drove a truck "over 200 miles at night in an area that had just underwent a terrible ice storm," and whether this "could . . . be a stressful event . . . that could have triggered or precipitated [the stroke]," Dr. Quarles replied, "[t]heoretically, I think that's true, yes." Like Dr. Deshazo, Dr. Quarles concluded that it was possible that the employee could have had the stroke at most any time given his severe coronary artery disease.

Dr. Manual Weiss, a neurological surgeon testifying for the employer, reviewed the employee's medical records and the deposition of Dr. Deshazo. Dr. Weiss testified that there are two general types of strokes - one caused by bleeding in the brain itself, and the other from a lack of blood getting to the brain. He testified that the employee's stroke was caused by the latter. Dr. Weiss also stated that, in his opinion, stress was not a contributing factor. Rather, strokes of the type suffered by the employee happen when an artery is finally closed off after a lengthy period of increasing blockage. Dr. Weiss concluded that the employee would have had the stroke at some point regardless of the stress that he experienced driving in the ice storm. It is also worth noting that, like Doctors Deshazo and Quarles, Dr. Weiss indicated that driving a truck through an ice storm is a stressful event. However, unlike Doctors Deshazo and Quarles, Dr. Weiss has not treated - or even met - the employee.

After considering the evidence, the trial court found that "proof concerning the road conditions being 'horrendous' is clear and convincing." Relying upon testimony from other truck drivers who testified that they made the same trip as the employee on February 11 and found it unusually stressful,

the court concluded that the conditions of employment precipitated the employee's stroke. Benefits were awarded accordingly.

Our review of findings of fact by the trial court is <u>de novo</u> upon the record of the trial court, accompanied by a presumption of the correctness of those findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2); <u>Lollar v. Wal-Mart Stores, Inc.</u>, 767 S.W.2d 143, 149 (Tenn. 1989). Considerable deference must be accorded to the trial court's factual findings on issues related to the credibility of witnesses and the weight to be given their testimony. <u>Humphrey v. David Witherspoon, Inc.</u>, 734 S.W.2d 315 (Tenn. 1987).

In order to be eligible for workers' compensation benefits, an employee must suffer "an injury by accident arising out of and in the course of employment which causes either disablement or death." Tenn. Code Ann. § 50-6-102(a)(5). The phrase "arising out of" refers to causation. <u>Braden v. Sears, Roebuck and Co.</u>, 833 S.W.2d 496, 498 (Tenn. 1992). The causation requirement is satisfied if the injury has a rational, causal connection to the work. <u>Id</u>. Although causation cannot be based upon merely speculative or conjectural proof, <u>Simpson v. H.D. Lee Co.</u>, 793 S.W.2d 929, 931 (Tenn. 1990), absolute certainty is not required. <u>Tindall v. Waring Park Ass'n</u>, 725 S.W.2d 935, 937 (Tenn. 1987). Any reasonable doubt in this regard is to be construed in favor of the employee. <u>White v. Werthan Industries</u>, 824 S.W.2d 158, 159 (Tenn. 1992). We have thus consistently held that an award may properly be based upon medical testimony to the effect that a given incident "could be" the

cause of the employee's injury, when there is also lay testimony from which it reasonably may be inferred that the incident was in fact the cause of the injury. P & L Const. Co. v. Lankford, 559 S.W.2d 793, 794 (Tenn. 1978).

We also note that there is no requirement that the accident resulting in injury be physical in nature. Injuries are generally compensable as accidental injuries when they are precipitated by physical exertion or strain or a specific incident or series of incidents involving mental or emotional stress of an unusual or abnormal nature. Bacon v. Sevier County, 808 S.W.2d 46 (Tenn. 1991). In other words, excessive and unexpected mental anxiety, stress, tension or worry attributable to the employment can cause injuries sufficient to justify an award of benefits. See Jose v. Equifex, Inc., 556 S.W.2d 82, 84 (Tenn. 1977). With these principles in mind, we review the record to determine whether the evidence preponderates against the findings of the trial court.

Several witnesses testified concerning road conditions on the day that the employee suffered the stroke and wrecked his truck. Witnesses called by the employer testified that road conditions along the route driven by the employee were "good," and that driving on that date was "just like any other day." However, even these witnesses conceded that there were parts of the interstate between Nashville and Memphis where "you just had to slow down and weave yourself through [fallen trees]."

Witnesses called by the employee characterized the driving conditions along the employee's route as "horrendous," "terrible," "extremely

6

hazardous," and stated that only one lane of travel was passable on parts of the interstate. The employee's wife testified that on the day of the accident, the employee told her over the telephone that driving conditions were "rough." When she attempted to travel from Livingston to Memphis later that evening to see her husband after learning of the accident, she discovered that "there were trees down all over the interstate. It was like running an obstacle course dodging the trees." A photograph contained in the record shows large trees hanging over or on the interstate due to the weight of ice. Various truck drivers testified that they had to maneuver around trees on the interstate, and stated that they could hear trees popping and cracking around them.

A witness who was driving the interstate to Memphis on the day that the employee suffered the stroke testified that she saw "the big eighteen wheelers over on their tops, on their sides. You pick a direction and one was laying there. . . . Cars in every which direction, in the median, at the sides, heading the wrong direction on the other side. It looked like a shooting gallery." A truck driver with 32 years of experience, who drove the interstate to Memphis on the day in question, testified that the driving conditions were the worst he had ever experienced, and that an abnormal amount of stress was involved given the dangerous conditions. Other truck drivers testified similarly, noting that the driving conditions presented an extremely dangerous and abnormally stressful situation. That situation became much worse after dark - when the employee was still on the road - because it was difficult to see trees and ice on the interstate. A manager for the employer testified that in his eleven years of employment he could not recall a time other than February 10, 1994 (and the early morning hours of February 11) when drivers were called off the roadway due to poor weather conditions.

7

In light of the foregoing evidence, we are persuaded that there is ample evidence in the record to support the trial court's finding that the employee was performing the obligations of his employment in an unusual and abnormally stressful set of circumstances. While the ice storm may have been at its worst on February 10 and have ended by the time of the employee's accident on February 11, the record is clear that the employee had driven three consecutive days through the storm or its aftermath. The employee spent part of this time driving in darkness, when it was particularly difficult to see ice and trees on the roadway, making a bad situation worse. We are further persuaded that the testimony of both of the treating physicians, Dr. Deshazo and Dr. Quarles, that stress experienced by the employee driving through the ice storm could have precipitated his stroke, is sufficient to establish causation. Although the evidence of causation is not overwhelming, we cannot conclude that the evidence preponderates against the trial court's conclusion that the employee made the required showing that his injury arose out of his employment.

For the foregoing reasons, the judgment of the trial court is affirmed. Costs on appeal are taxed to the defendant - appellant.

_____
FRANK F. DROWOTA, III, JUSTICE

Concur:

Birch, C.J.,
Anderson, Reid, Holder, J.J.