**Phil HOUSER, Deceased, et al.**

v.

**BI–LO, INC.**

Supreme Court of Tennessee,
at Knoxville.

Jan. 19, 2001.

---

K.O. Herston, Knoxville, TN, for the appellant, Phil Houser, deceased, by and through his surviving spouse, Sharon Houser.

B. Chadwick Rickman, Knoxville, TN, for the appellee, Bi–Lo, Inc.

## OPINION

ANDERSON, C.J., delivered the opinion of the court, in which BIRCH, HOLDER, and BARKER, JJ., joined.

In this workers' compensation case, the widow of the employee, Phil Houser, has appealed from a circuit court judgment denying the employee's claim for benefits filed against the employer, Bi–Lo, Inc. The employee, who managed the employer's grocery store, suffered a stroke after becoming upset over unexpectedly receiving an unusually large order of stock. The trial court denied benefits because receiving a large shipment of stock did not constitute an unusual or abnormal circumstance for the manager of a grocery store. The plaintiff appealed, arguing that the employee was performing the obligations of his employment in an abnormally stressful set of circumstances when he suffered the stroke. The appeal was argued before the Special Workers' Compensation Appeals Panel pursuant to Tenn.Code Ann. § 50–6–225(e)(3) (1999 & Supp.2000), but transferred to the full Supreme Court prior to the Panel issuing its decision. The question before this Court is whether the evidence preponderates against the trial court's finding that the employee's stroke did not arise out of his employment because it was not caused by a mental or emotional stimulus of an unusual or abnormal nature, beyond what is typically encountered by the manager of a grocery store. After carefully examining the record and the relevant authorities, we affirm the trial court's decision.

### BACKGROUND

The employee, Phil Houser, was the manager of a grocery store owned by the employer, Bi–Lo, Inc. As manager of the store, he was responsible for ordering stock. On December 17, 1996, he arrived at work to discover that another employee had also ordered stock for the store, re-

sulting in the receipt of an excessively large order. Not long after he discovered the extra stock, he suffered a stroke while reaching down to pick up a box. After a period of hospitalization and recovery, the employee resumed working in the store under light duty restrictions. He suffered a second, fatal stroke on October 16, 1998, several months after he no longer worked for the employer.

At trial, a former Bi–Lo employee, Burt Cannon, testified that he was working as a stock person on the night the extra stock arrived at the store. Cannon said that when the manager discovered the extra stock, he went "ballistic" and became "red, real red-faced." Cannon also stated that the extra stock caused much confusion and caused the stock room to appear "messy." According to Cannon, it was not normal for an unauthorized employee to order stock.

Andrew White, another worker on duty that night, testified that the manager was "upset" and "real mad" about receiving the extra stock. He stated that other employees in the store were upset as well. White, who was the manager of the store at the time of trial, testified that it was not unusual to have extra stock come in around the holidays and special events. Moreover, he stated that it was part of the manager's job to handle extra stock. White testified that when he became manager of the store, he thought about quitting because the duty of ordering stock was too much for him to handle.

Three physicians testified by deposition. The first of these was Dr. Gregory Wheatley, the employee's treating neurologist. Dr. Wheatley testified that the employee had several risk factors for a stroke, including a history of cerebral vascular disease; heart disease; high blood pressure; and smoking. It was his opinion that the episode of anger and stress on December 17, 1996, contributed to the employee's stroke. Dr. Wheatley also believed that "the injury from the initial stroke predisposed the employee to having bleeding in

that area [of the brain] which then . . . was the event that caused his death."

Another neurologist, Dr. Jack Scariano, testified that the employee's first stroke was caused by multiple pre-existing factors such as high blood pressure; alcohol use; smoking; and a history of cardiac disease. Dr. Scariano said that nothing in the employee's medical records indicated that the first stroke was causally related to his employment, and that anger was not a risk factor for having a stroke. He also testified that the second stroke was not causally related to the employee's work. Dr. Scariano stated that the first and second strokes were different types of strokes occurring at different areas in the brain and had no causal connection to each other.

Dr. Cleland Blake, a forensic pathologist, performed an autopsy on the employee and testified that the cause of the employee's death was a massive cerebral hemorrhage, i.e. a stroke. When asked whether he had an opinion as to whether the second stroke was causally related to the first stroke, Dr. Blake testified that the two were causally related in that the first one softened and weakened the brain.

After considering the evidence, the trial court denied the plaintiff's claim for benefits. The trial court reasoned that receiving a large shipment of stock did not constitute an unusual or abnormal circumstance for the manager of a grocery store. The plaintiff appealed. The appeal was argued before the Special Workers' Compensation Appeals Panel pursuant to Tenn.Code Ann. § 50–6–225(e)(3) (1999 & Supp.2000), but transferred to the full Supreme Court prior to the Panel issuing its decision.

## ANALYSIS

### *Standard of Review*

The standard of review in this case is *de novo* upon the record of the trial court, accompanied by a presumption of

the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(2) (1999 & Supp.2000). When issues regarding credibility of witnesses and the weight to be given their testimony are before a reviewing court, considerable deference must be accorded the trial court's factual findings. *See Krick v. City of Lawrenceburg,* 945 S.W.2d 709, 712 (Tenn.1997). However, this Court may draw its own conclusions about the weight and credibility of expert testimony when the medical proof is presented by deposition, as it was here, since we are in the same position as the trial judge to evaluate such testimony. *See Krick v. City of Lawrenceburg,* 945 S.W.2d at 712; *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676–77 (Tenn. 1991).

### *Compensability*

In order to be eligible for workers' compensation benefits, an employee must suffer an "injury by accident arising out of and in the course of employment which causes either disablement or death...." Tenn.Code Ann. § 50–6–102(12) (1999). The statutory requirements that the injury "arise out of" and occur "in the course of" the employment are not synonymous. *See Sandlin v. Gentry,* 201 Tenn. 509, 300 S.W.2d 897, 901 (1957). An injury occurs "in the course of" employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle,* 856 S.W.2d 952, 958 (Tenn.1993). Put another way, "the injury must have substantially originated from the 'time and space' of work, resulting in an injury directly linked to the work environment or work-related activities." *Harman v. Moore's Quality Snack Foods,* 815 S.W.2d 519, 527 (Tenn.Ct.App.1991). Accordingly, the course of employment requirement focuses on the "time, place and circumstances" of the injury. *Hill v. Eagle Bend Mfg., Inc.,* 942 S.W.2d 483, 487 (Tenn. 1997).

In contrast, "arising out of" employment refers to "cause or origin." *Hill v. Eagle Bend Mfg., Inc.,* 942 S.W.2d at 487. An injury arises out of employment "when there is apparent to the rational mind, upon a consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Fink v. Caudle,* 856 S.W.2d at 958. The mere presence of the employee at the place of injury because of the employment is not sufficient, *see Thornton v. RCA Serv. Co.,* 188 Tenn. 644, 221 S.W.2d 954, 955 (1949), as the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work. *See Travelers Ins. Co. v. Googe,* 217 Tenn. 272, 397 S.W.2d 368, 371 (1965); *Jackson v. Clark & Fay, Inc.,* 197 Tenn. 135, 270 S.W.2d 389, 390 (1954); *Thornton v. RCA Serv. Co.,* 221 S.W.2d at 956–57; *Harman· v. Moore's Quality Snack Foods,* 815 S.W.2d at 527. As one court has put it, the "danger must be peculiar to the work.... [A]n injury purely coincidental, or contemporaneous, or collateral, with the employment ... will not cause the injury ... to be considered as arising out of the employment." *Jackson v. Clark & Fay, Inc.,* 270 S.W.2d at 390.

The present case focuses on whether the employee's injury arose out of his employment, as there is no question that it occurred in the course of the employment. Relying on *Reeser v. Yellow Freight Sys., Inc.,* 938 S.W.2d 690 (Tenn.1997), the plaintiff argues that her husband's stroke on December 17, 1996, arose out of his employment because receiving the shipment of overstock, which caused the employee to become angry, was an abnormal or unusual event. The employer responds that dealing with overstock such as occurred on December 17, 1996, was part of the employee's job and should be considered normal stress and therefore not compensable. The employer thus urges this

Court to affirm the trial court's denial of benefits.

We agree with the parties that this case is controlled largely by our decision in *Reeser*, which is the seminal case in this jurisdiction regarding the compensability of strokes. In *Reeser*, the employee suffered a stroke while driving a large truck through one of the worst ice storms to ever hit the area. 938 S.W.2d at 691. The employee had to navigate his truck through "horrendous" weather and road conditions and around vehicles and trees, at times in the dark. *Id.* at 692–93. We affirmed the trial court's finding that the employee's stroke arose out of his employment. *Id.* at 693. In doing so, we relied upon the settled rule that "[i]njuries are generally compensable as accidental injuries when they are precipitated by physical exertion or strain *or* a specific incident or series of incidents involving mental or emotional stress of an unusual or abnormal nature." *Id.* at 692 (citing *Bacon v. Sevier County*, 808 S.W.2d 46, 52 (Tenn.1991)).

■■■ With regard to injuries caused by a mental or emotional stimulus, we stated in *Reeser* that "excessive and unexpected mental anxiety, stress, tension or worry attributable to the employment can cause injuries sufficient to justify an award of benefits." *Id.* However, the ordinary stress of one's occupation does not meet this standard because "[e]motional stress, to some degree, accompanies the performance of any contract of employment." *Allied Chem. Corp. v. Wells*, 578 S.W.2d 369, 373 (Tenn.1979). In other words, "[n]ormal ups and downs are part of any employment relationship and, as we have said on many previous occasions, do not justify finding an 'accidental injury' for purposes of worker[s'] compensation law." *Bacon v. Sevier County*, 808 S.W.2d at 53 (citations omitted). Thus, the rule is settled in this jurisdiction that physical or mental injuries caused by worry, anxiety, or emotional stress of a general nature or ordinary stress associated with the worker's occupation are not compensable. The injury must have resulted from an incident involving mental stress of an unusual or abnormal nature, rather than the day-to-day mental stresses and tensions to which workers in that field are occasionally subjected.

■■■ With these principles in mind, we review the record in the present case to determine whether the employee's stroke on December 17, 1996, arose out of his employment. We note first that there was no physical exertion or strain involved in precipitating the stroke. Instead, according to some of the medical proof, the mental stress or tension of having to deal with the unexpected shipment of overstock caused the stroke. However, the record is uncontradicted that handling overstock was part of the employee's job as the manager of the store. Moreover, evidence was presented that it was normal for extra stock to arrive at the store during holidays. The stock involved here arrived at the store shortly before Christmas. Accordingly, it cannot be said that the evidence preponderates against the trial court's finding that the employee's stroke did not arise out of his employment. The reason, simply put, is that the stroke was not caused by a mental or emotional stimulus of an unusual or abnormal nature, beyond what is typically encountered by the manager of a grocery store.

We thus reiterate the rule again in this case that physical or mental injuries caused by a mental or emotional stimulus; excessive and unexpected mental anxiety; or stress, tension, or worry attributable to the employment can justify an award of benefits, but the ordinary mental stresses and tensions of one's occupation do not because "[e]motional stress, to some degree, accompanies the performance of any contract of employment." *Allied Chem. Corp. v. Wells*, 578 S.W.2d at 373. If the rule were otherwise, workers' compensation coverage would become as broad as general health and accident insurance, which it is not. *See Jose v. Equifax, Inc.*, 556 S.W.2d 82, 84 (Tenn.1977).

In sum, the present case falls within the rule that "[n]ormal ups and downs are part of any employment relationship and, as we have said on many previous occasions, do not justify finding an 'accidental injury' for purposes of worker[s'] compensation law." *Bacon v. Sevier County*, 808 S.W.2d at 53 (citations omitted). We thus conclude that neither stroke, and hence the employee's death, arose out of his employment. Accordingly, the trial court correctly denied benefits.

## *CONCLUSION*

In view of the foregoing discussion, we hold that the evidence does not preponderate against the trial court's denial of benefits. The trial court is affirmed. Costs of this appeal are taxed to the plaintiff.

DROWOTA, J., not participating.