# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 9, 2004 Session at Memphis

## TERRY RUDDLE MAHONEY v. NATIONSBANK OF TENNESSEE, N.A.

**Direct Appeal from the Circuit Court for Shelby County**
**No. 93637-6 T.D.      George H. Brown, Jr., Judge**

---

**No. W2003-02570-SC-R3-CV - Filed February 23, 2005**

---

We granted review in this workers' compensation case to determine whether the trial court erred in awarding benefits against the defendant employer where the employee was first injured and missed work while employed by a previous employer. After reviewing the record and applicable authority, we conclude that the trial court erred in awarding benefits against the defendant employer because the preponderance of the evidence is that the employee's gradually-occurring injury became compensable while working for the prior employer and did not progress while working for the defendant employer. Accordingly, we reverse the trial court's judgment.

**Tenn. Code Ann. § 50-6-225(e); Judgment of the Trial Court Reversed**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Raymond J. Lepone and Robin H. Rasmussen, Memphis, Tennessee, for the Appellant, NationsBank of Tennessee, N.A.

William M. Jeter, Memphis, Tennessee, for the Appellee, Terry Ruddle Mahoney.

### OPINION

In this workers' compensation case, the dispute we address centers on whether in a merger of two employers the resulting employer may be held liable for an employee's permanent partial disability benefits when the employee was first injured, missed work, and received partial benefits prior to the merger.

The employee contends that the resulting employer—the defendant herein— should be liable because she suffered a gradually-occurring injury and was last exposed to the conditions causing her injury after the merger. The defendant employer argues that the employee first reported her injury, was treated, and missed work prior to the merger and that her injury did not progress and was not

aggravated in her employment following the merger. As a result, the defendant employer should not be liable.

## BACKGROUND

Terry Ruddle Mahoney ("Mahoney"),[1] the employee in this case, went to work in collections for Boatmen's Bank in 1991. Mahoney suffered an on-the-job wrist injury in 1996 and was diagnosed with carpal tunnel syndrome. On January 1, 1997, Boatmen's Bank merged with NationsBank. Mahoney filed a workers' compensation suit on March 19, 1998, against both Boatmen's Bank and NationsBank, but Mahoney voluntarily dismissed Boatmen's Bank in January of 2000. Consequently, Boatmen's Bank is not a party to this action.

Mahoney testified at trial as follows. She began experiencing problems with her wrists in 1995 or 1996, including numbness, tingling and soreness around her fingers and wrists. She reported the injury to the benefits manager at Boatmen's Bank in June of 1996, and she was provided medical care. She first missed work in June of 1996 and was on short-term disability leave from work for three months between June and September of 1996. In September of 1996, her doctors told her that she had carpal tunnel syndrome, and she was "on and off [work] quite some time" between June of 1996 and January of 1997.

Mahoney was laid off on March 31, 1997, as part of the merger between Boatmen's Bank and NationsBank. According to the severance agreement between Mahoney and NationsBank, Mahoney was paid ten weeks of salary continuation following her last day of employment on March 31, 1997, for a total of $4,357. In exchange for the payment, Mahoney agreed "to release NationsBank from any and all claims, suits, demands, or other causes of action of any kind . . . ." The release, however, specifically excluded Mahoney's workers' compensation claim against Boatmen's Bank, providing:

> Notwithstanding the foregoing, nothing herein shall be construed to constitute a waiver of the Worker's Compensation claim you currently have against Boatmen's Banc [sic] Shares, Inc. styled as Teri [sic] Ruddle v. Boatmen's Banc Shares, Inc., Civil Action Number 85096209908.

Mahoney signed the release agreement on March 14, 1997.

Mahoney testified that after the merger in January 1997, she was working only two to three days a week. She testified that the pain she was experiencing in her wrists continued into and through her employment with NationsBank and continued up until the time of trial in November 2002.

---

[1] At the time of the trial, the plaintiff identified herself as Terry Lynn Harvey, but because her case remained captioned Terry Ruddle Mahoney, that is how we refer to her in this opinion.

Dr. Riley Jones, who treated Mahoney in January and February of 1997, testified by deposition that at the time he treated her, she had mild bilateral carpal tunnel syndrome. He performed an electromyography test ("EMG") on her and reviewed her previous medical records. Dr. Jones testified that there was "no significant change" in Mahoney's condition since the previous July. He testified that the carpal tunnel was work-related but that Mahoney had "more of a stress phenomena than anything else" and that the stress was not work-related. He testified that the carpal tunnel syndrome had not advanced in severity from July 1996 to January 1997.

Dr. Joseph Boals, who examined Mahoney in January 2002 at the request of her lawyer, also testified by deposition that Mahoney's carpal tunnel syndrome was work-related but that her other conditions were not. He testified that he agreed with the conclusion that the 1997 EMG did not show any significant change in Mahoney's condition since 1996.

### *Procedural History*

Mahoney filed a complaint for workers' compensation benefits against "NationsBank of Tennessee, N.A., formerly known as Boatmen's Bank, N.A.," and Fireman's Fund Insurance, Boatmen's Bank's workers' compensation insurer, on March 19, 1998.

Boatmen's Bank and Fireman's Fund filed an answer on June 5, 1998, denying that Mahoney was entitled to any workers' compensation benefits through Boatmen's Bank or Fireman's Fund as of March 31, 1997. On December 2, 1998, NationsBank filed an answer denying all of Mahoney's claims for injury and compensation.

On August 18, 1999, Boatmen's Bank and Firemen's Fund filed a motion to dismiss on the grounds that the injury complained of occurred on March 31, 1997. The motion reasoned that the complaint alleged a gradual injury that allegedly continued and was aggravated by employment through and until March 31, 1997, and that Mahoney was not employed by Boatmen's Bank, and thus not covered by Firemen's Fund as of that date.

On January 3, 2000, Mahoney voluntarily dismissed without prejudice Boatmen's Bank and Fireman's Fund as defendants. The order specified that the dismissal was as to Boatmen's Bank and Fireman's Fund only. No further action was taken in the case until plaintiff's attorney in late 2000 moved the court to set the case for trial.

The trial court set the case, and it was finally tried before Judge George H. Brown, Jr., in Shelby County Circuit Court on November 12, 2002, more than six years after the initial injury.[2]

---

[2] The record does not reveal whether the delay in this case was due to the inaction of counsel, of the trial court, or both. The Legislature has directed that workers' compensation cases be expedited by giving the cases "priority over all cases on the trial and appellate dockets." Tenn. Code Ann. § 50-6-225(f)(1) (1999). Additionally, this Court has adopted internal procedures to expedite the review and disposition of workers' compensation cases. In our view, a delay of more than six years from the initial injury, and a delay of over four years in bringing the case to trial from the time
(continued...)

After hearing testimony from Mahoney and considering the evidentiary depositions of Dr. Jones and Dr. Boals, the trial court awarded benefits to Mahoney against NationsBank. The court concluded that Mahoney "suffered an injury arising out of and in the course and scope of her employment with the defendant, NationsBank." The trial court further concluded that Mahoney's injury was a "continuous injury." The court found that Mahoney had suffered a vocational disability of twenty-five percent (25%) to each arm, entitling her to a judgment of $29,049.00, and ordered that the payment be made in a lump sum.

NationsBank appealed. We accepted review before the case was heard or considered by the Special Workers' Compensation Appeals Panel.

## ANALYSIS

Our standard of review of factual issues in a workers' compensation case is de novo upon the record of the trial court, accompanied by a presumption of correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (1999); see also Houser v. Bi-Lo, Inc., 36 S.W.3d 68, 70-71 (Tenn. 2001). When the trial court has seen the witnesses and heard the testimony, especially where issues of credibility and the weight of testimony are involved, the appellate court must extend considerable deference to the trial court's factual findings. Houser, 36 S.W.3d at 71. In reviewing documentary evidence such as depositions, however, we extend no deference to the trial court's findings. Ferrell v. Cigna Prop. & Cas. Ins. Co., 33 S.W.3d 731, 734 (Tenn. 2000). Our standard of review of questions of law is de novo without a presumption of correctness. Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 826 (Tenn. 2003).

As a threshold issue, we must determine whether to treat Boatmen's Bank and NationsBank as one entity. We note that Mahoney's position is not clear on this point. At oral argument before this Court, Mahoney's attorney argued that the banks are one entity. However, in her brief to this Court, Mahoney stated that the two banks were separate employers, not a single entity. Mahoney brought her complaint against "NationsBank, formerly known as Boatmen's Bank," but Boatmen's Bank and NationsBank filed separate answers. Additionally, the release Mahoney signed prior to her termination from NationsBank specifically preserved her workers' compensation claim against Boatmen's Bank, which would seem to be unnecessary if NationsBank were indeed a separate entity.[3] Because the record was never developed as to the merger agreement and whether and to

---

[2](...continued)
of the complaint, is simply inexcusable.

[3] Although the agreement purported to release NationsBank from all claims including workers' compensation, an employer may not contract to avoid its workers' compensation liability. Tenn. Code Ann. § 50-6-114 (1999); see also Fink v. Caudle, 856 S.W.2d 952, 959 (Tenn. 1993) ("Employers are prohibited by law from making any agreement, contract, rule, regulation or other device which would operate to extinguish or reduce its obligations under the Workers' Compensation Law.").

what extent NationsBank is responsible for Boatmen's Bank's liabilities, we will treat the two as separate employers for purposes of our analysis. Cf. Perrin, 120 S.W.3d at 827.

Moreover, Mahoney's voluntary dismissal without prejudice was as to Boatmen's Bank and its insurer, Fireman's Fund, only. As NationsBank points out, if the two banks are a single entity, then the voluntary dismissal would have operated to dismiss the entire case and, because Mahoney did not re-file within one year, the statute of limitations would now bar her claim against NationsBank. See Tenn. Code Ann. § 50-6-203 (1999) (amended January 1, 2005).

### *Discussion*

Mahoney argues that NationsBank should be liable for her injury because she suffered a compensable, gradually-occurring injury and NationsBank was the employer where she was last exposed to the conditions causing her injury. NationsBank agrees that Mahoney suffered a compensable, gradually-occurring injury but argues that because Mahoney first reported her injury, was treated, and missed work while employed by Boatmen's Bank, NationsBank should not be liable for Mahoney's claim. Because the parties disagree about the analytic framework applicable to this case, we begin with a review of the law governing gradually-occurring injuries such as carpal tunnel syndrome.

### *Gradually-Occurring Injuries are "Accidental" Injuries*

Tennessee's Workers' Compensation Act provides that accidental injuries arising out of and in the course and scope of employment are compensable. Tenn. Code Ann. § 50-6-103(a) (1999). We have long-recognized that gradually-occurring injuries are compensable as accidental injuries under the Act even though it is difficult, if not impossible, to link such injuries to a particular "accident." Brown Shoe Co. v. Reed, 350 S.W.2d 65, 69 (Tenn. 1961); see also Lawson v. Lear Seating Corp., 944 S.W.2d 340, 341 (Tenn. 1997); Barker v. Home-Crest Corp., 805 S.W.2d 373, 375 (Tenn. 1991). Carpal tunnel syndrome is compensable as a gradually-occurring accidental injury. See, e.g., Lawson, 944 S.W.2d at 341; Barker, 805 S.W.2d at 375.

Since recognizing that gradually-occurring injuries are compensable under the Act, this Court has been presented several times with the problem of how to determine when such injuries occur. It is necessary to fix a date of injury in order to determine, for example, when the statute of limitations begins to run, what the employee's compensation rate should be, and, as in this case, which of two succeeding employers or insurance carriers must bear the liability for the employee's claim.

We have held that for purposes of determining when the one-year statute of limitations begins to run, the date of a gradually-occurring injury is the date the employee becomes unable to work. Lawson, 944 S.W.2d at 343; Reed, 350 S.W.2d at 69-70. This "last day worked" rule operates to "fix a date certain when the employee knows or should know that he or she sustained a work-related

injury so that workers with gradual injuries will not lose the opportunity to bring claims." Bone v. Saturn Corp., 148 S.W.3d 69, 73 (Tenn. 2004).

We have also applied the last day worked rule to determine the question at issue in this case, i.e., which of two succeeding insurers or employers is liable for payment of a claim. In Barker, we held that because the employee's carpal tunnel syndrome grew progressively worse with "new trauma . . . each day at work," the date of injury should be fixed as the date the employee was finally prevented from working. 805 S.W.2d at 376.

We have recently clarified, however, that the last day worked rule does not apply when the employee provides actual notice of the injury to the employer, because "[i]n that event, there is no question that the employee knows the work-related nature of his or her injury; thus there is no reason to use another date." Bone, 148 S.W.3d at 73-74.

*Application to Mahoney's Injury*

Here, the record establishes that Mahoney first gave notice of her injury to her employer, Boatmen's Bank, in June of 1996. Mahoney testified that she reported the injury to the benefits manager at Boatmen's Bank in June 1996 and that she was first examined for carpal tunnel in June 1996. Thus, because Mahoney provided actual notice to her employer, "there is no question that [Mahoney knew] the work-related nature" of her injury, and "there is no reason to use another date." Bone, 148 S.W.3d at 73-74. Mahoney suffered a compensable accidental injury in June of 1996, while employed at Boatmen's Bank.

At the time of Mahoney's injury, Boatmen's Bank was her employer, and Firemen's Fund was the insurance carrier. Thus, Boatmen's Bank and Fireman's Fund should be liable for the claim. Unfortunately, however, Mahoney voluntarily dismissed Boatmen's Bank and Firemen's Fund on January 3, 2000, and did not recommence her suit within the one-year window provided by the Savings Statute, Tennessee Code Annotated section 28-1-105(a) (2000).

We note that even if the last day worked rule did apply in this case, Mahoney also testified that she first missed work due to her injury in June of 1996 and that she was on short-term disability leave from work for three months between June and September of 1996. Although she testified that she was not diagnosed with carpal tunnel syndrome until September of 1996, she first missed work due to her work-related injury in June of 1996. Thus, Mahoney was a Boatmen's Bank employee on the date that the injury finally prevented her from working; under either the notice rule or the last day worked rule, Mahoney's injury occurred on Boatmen's watch.

*Last Injurious Injury Rule*

Our determination that Mahoney's injury first occurred while employed by Boatmen's Bank does not end the inquiry, however. Mahoney argues that this case is controlled by the "last injurious exposure" rule and that, because she was last exposed to the working conditions leading to her

disability while at NationsBank, NationsBank should be responsible for paying her permanent disability.

The Workers' Compensation Act provides that, in the case of occupational disease, the employer responsible for the "last injurious exposure" is responsible for the employee's compensation. Tenn. Code Ann. § 50-6-304 (1999). Although carpal tunnel syndrome is not an occupational disease, in cases of accidental injuries, such as this one, a similar rule applies. Generally termed the "last injurious injury" rule, the rule operates to place liability for an employee's disability on the last employer if working conditions at the last employer aggravated the employee's pre-existing injury. Baxter v. Smith, 364 S.W.2d 936, 942-43 (Tenn. 1962); see also Riley v. INA/Aetna Ins. Co., 825 S.W.2d 80, 81-82 (Tenn. 1992).

The last injurious injury rule recognizes that because "[b]oth the employer and its insurance carrier take the employee as they find him," there can be no apportionment of liability between a prior employer and the last employer. Bennett v. Howard Johnsons Motor Lodge, 714 S.W.2d 273, 278 (Tenn. 1986).

Although never addressed by this Court, the Special Workers' Compensation Appeals Panel has applied the last injurious injury rule to gradually-occurring injuries such as carpal tunnel syndrome. See, e.g., Falcon v. Gaylord Entm't Co., No. M2000-02948-WC-R3-CV, 2001 WL 1557801 at *2 (Tenn. Workers' Comp. Panel Dec. 4, 2001); Wood v. Porter Cable Corp., No. W2000-01771-WC-R3-CV, 2001 WL 987148 at *5 (Tenn. Workers' Comp. Panel Aug. 20, 2001); Moore v. Liberty Mut. Ins. Co., No. 02S01-9806-CH-00056, 1999 WL 640251 at *4 (Tenn. Workers' Comp. Panel Aug. 23, 1999). We find those opinions to be well-reasoned and hold that the last injurious injury rule does apply to gradually-occurring injuries.

To determine whether a subsequent employer is responsible for a gradually-occurring injury that began at a prior employer, we must consider whether the employee's condition was aggravated or advanced due to working conditions at the second employer. Barker, 805 S.W.2d at 375; see also Moore, 1999 WL 640251 at *4. It is not enough that the employee continued to suffer from the effects of an injury while employed by a second employer; rather, to be compensable, there must be a progression of the employee's injury. See Barker, 805 S.W.2d at 375. This requirement is consistent with the general requirement that there be a second accidental injury to trigger liability on the part of a second employer.

*Application to Mahoney's Injury*

Here, the last injurious injury rule would operate to impose upon NationsBank liability for Mahoney's injury had her injury progressed or been aggravated by the working conditions at NationsBank. The trial court held that Mahoney's injury was a continuous injury and that NationsBank was responsible for her workers' compensation benefits. The trial court did not make a specific finding that Mahoney's injury progressed or was aggravated at NationsBank.

We disagree with the trial court's conclusion because there is no evidence in the record that Mahoney's injury progressed or was aggravated during her tenure with NationsBank. Dr. Jones, who treated Mahoney in January and February of 1997, testified that there had been "no significant change" in Mahoney's condition since July of 1996. He further testified that the carpal tunnel syndrome had not advanced in severity from July 1996 to January 1997. Dr. Boals agreed with the conclusion that the EMG performed in 1997 did not show any significant change in Mahoney's condition as diagnosed in 1996. Moreover, Mahoney herself did not testify that her condition progressed while at NationsBank. When asked if her wrist was "getting better, worse, [or] staying the same" at the beginning of 1997, she answered only that she was "still having trouble with my wrists" at that time. This scant testimony, combined with the opinion of both testifying physicians that Mahoney's condition did not deteriorate while at NationsBank, leaves us with the inescapable conclusion that, although Mahoney continued to suffer the effects of her original injury while at NationsBank, she did not suffer a compensable progression or aggravation of that injury while at NationsBank. The compensable injury occurred at Boatmen's Bank, which was voluntarily dismissed from this case. In the absence of any evidence of a progression or aggravation in Mahoney's carpal tunnel syndrome during her employment with NationsBank, NationsBank cannot be held liable for her workers' compensation benefits.

## CONCLUSION

After reviewing the record and applicable authority, we conclude that the trial court erred in awarding benefits payable by NationsBank. Accordingly, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellee, Terry Ruddle Mahoney, for which execution may issue if necessary.

_____
E. RILEY ANDERSON, JUSTICE