**Betty Jeane SCOTT**

v.

**CUMBERLAND HEALTH CARE CEN-
TER, INC., d/b/a General Care Con-
valescent Center, et al.**

Supreme Court of Tennessee,
Special Workers' Compensation Appeals
Panel at Nashville.

October 13, 2000 Session.

Feb. 28, 2001.

Jill A. Hanson, Nashville, TN, for appel-
lants Cumberland Health Care Center,
Inc., d/b/a General Care Convalescent
Center and Legion Insurance Company.

Stacy A. Turner, Clarksville, TN, for
appellee, Betty Jeane Scott.

**JUDGMENT**

PER CURIAM.

This case is before the Court upon Ap-
plicant's motion for review pursuant to
Tenn.Code Ann. § 50–6–225(e)(5)(B), the
entire record, including the order of refer-

ral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference;

Whereupon, it appears to the Court that the motion for review is not well-taken and should be DENIED; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court. The Court further recommends that the Special Workers' Compensation Appeals Panel opinion be published.

Costs will be assessed to Cumberland Health Care Center, Inc., d/b/a General Care Convalescent Center, and Legion Insurance Company for which execution may issue if necessary.

DROWOTA, J., not participating.

JOHN K. BYERS, Sr. J., delivered the opinion of the court, in which FRANK F. DROWOTA, III,J., and TOM E. GRAY, Sp. J., joined.

## OPINION

This workers' compensation appeal has been referred to the Special Workers' Compensation Appeals Panel of the Supreme Court in accordance with Tennessee Code Annotated § 50–6–225(e)(3) for hearing and reporting to the Supreme Court of findings of fact and conclusions of law. The trial court found the plaintiff had suffered an injury arising out of her employment with the defendant and awarded her thirty-five percent vocational disability to the body as a whole. Further, the trial court ordered the defendant to pay medical expenses incurred by the plaintiff as a result of the injury. The defendant argues the evidence does not support the finding of the trial court as to a compensable injury and the vocational disability, and claims the medical bills incurred by the plaintiff were not necessary We affirm the judgment of the trial court.

The trial court found the plaintiff had suffered an injury arising out of her employment with the defendant and awarded her thirty-five percent vocational disability to the body as a whole. Further, the trial court ordered the defendant to pay medical expenses incurred by the plaintiff as a result of the injury. The defendant argues the evidence does not support the finding of the trial court as to a compensable injury and the vocational disability, and claims the medical bills incurred by the plaintiff were not necessary.

### Facts

The plaintiff, forty-seven years of age at the time of trial, has a twelfth-grade education, and training as a certified nurses' aide. The plaintiff began working for the defendant in 1974. She left work for the defendant for a period of time but returned during the mid or later part of the 1980's.

On July 9, 1991, she fell while in the course of her work. She fell upon her left side and injured her lower back, left hip, cervical and thoracic spine and left shoulder.

### Medical Evidence

The defendant first sent the plaintiff to Dr. David Gullet, the company doctor. Dr. Gullet referred the plaintiff to Dr. Steve McLaughlin, an orthopedic surgeon. Dr. McLaughlin entered into a course of treatment of the plaintiff on July 24, 1991.

Dr. McLaughlin found the plaintiff had a pinching of the rotator cuff in her shoulder and an inflamation of the bursa over the left hip, which accounted for her left hip and left knee pain. Dr. McLaughlin opined these findings were caused by the fall the plaintiff had at work.

Dr. McLaughlin saw the plaintiff again approximately ten days after the initial examination; she expressed complaints

similar to those of the earlier visit. On August 26, 1991, Dr. McLaughlin saw the plaintiff and had an MRI done which showed some degenerative disease at the 4th and 5th lumbar vertebra and perhaps a mass in the pelvis. Dr. McLaughlin did not see the plaintiff again until May 3, 1996. She missed an appointment on September 9, 1991.

Dr. McLaughlin saw the plaintiff on several occasions after the May appointment over the next few weeks. He found she was suffering from the same problems as she had in 1991. He was of the opinion that this was not unusual for the condition the plaintiff suffered in 1991. Dr. McLaughlin performed surgery upon the plaintiff's shoulder.

Dr. McLaughlin was of the opinion the plaintiff had sustained a ten percent medical impairment to the upper extremity.

The plaintiff went to Dr. James D. Davis, a chiropractor, on December 13, 1993, complaining of the same symptoms about which Dr. McLaughlin testified. Dr. Davis' examination revealed similar findings as those of Dr. McLaughlin. He found the plaintiff had a five percent permanent medical impairment to the body as a whole.

Dr. Richard Fishbein, an orthopaedic surgeon, evaluated the plaintiff in October of 1996. He found the plaintiff had suffered the injury described to the other doctors as a result of the fall. He found she had a whole body impairment of ten percent.

The plaintiff described to the trial judge how she experienced pain as a result of her injury. Further, another witness, the plaintiff's sister, described the limitations the plaintiff had after the fall.

### Medical Bills

The undisputed evidence in this case supports the finding of the trial judge that the defendant made all of the doctor's appointments for the plaintiff with Dr. McLaughlin. Prior to the appointment of September 9, 1991, the defendant had told the plaintiff not to come about their premises or call anymore. Because of this, the trial judge found the plaintiff sought the care of the other doctors.

### Discussion

■ The defendant attacks the finding of causation by asserting that at most the medical evidence rises only to the level of "could be." Based on this premise, the defendant says the plaintiff has failed to show sufficient lay testimony to qualify the plaintiff to recover under the holding in *Reeser v. Yellow Freight System, Inc.,* 938 S.W.2d 690 (Tenn.1997). The weakness of the defendant's position is that Dr. McLaughlin's testimony goes beyond "could be" to a statement that the injury was a result of the fall based upon reasonable medical certainty. The other medical evidence supports this view.

■ The defendant argues that the medical bills of other doctors should not be paid because they were not necessary or reasonable. The record shows the defendant refused to offer the plaintiff medical treatment after September of 1991. The plaintiff properly sought medical treatment and the trial judge found the medical bills were proper. The evidence supports this finding.

### Extent of Vocational Disability

■ The testimony of the doctors showed the plaintiff sustained at least a five percent whole body impairment and at most a ten percent whole body impairment. The award of the trial judge is supported by the evidence.

The judgment of the trial court is affirmed in all things.

The cost of the appeal is taxed to the defendants.