**FILED**

**April 22, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 1:23 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE BY INTERCHANGE

| | | |
|---|---|---|
| Randall Harper, | ) | Docket No.: 2015-06-1067 |
| Employee, | ) | |
| v. | ) | State File No.: 47262-2015 |
| | ) | |
| | ) | |
| USF Holland Trucking Co., | ) | |
| Employer, | ) | |
| | ) | |
| | ) | Judge Robert Durham |

---

## COMPENSATION HEARING ORDER DENYING BENEFITS

---

On October 15, 2015, Randall Harper filed a Petition for Benefit Determination to determine if USF Holland Trucking, Co. is obligated to provide medical and temporary disability benefits for an alleged work-related injury on June 16, 2015. The dispositive issue is whether Mr. Harper's cellulitis in his left leg causally relates to his employment with USF Holland.[1] The Court finds the evidence submitted by Mr. Harper is insufficient to establish a causal connection, thus requiring the Court to deny his request for workers' compensation benefits.[2]

### History of Claim

Mr. Harper is a fifty-two-year-old resident of Wilson County, Tennessee, who works as an over-the-road truck driver for USF Holland. On June 15, 2015, Mr. Harper left home and, after picking up his truck at USF Holland's Nashville terminal, drove to Grand Rapids, Michigan, arriving on the morning of June 16. USF Holland provided a shuttle bus that took him to the 131 Motel, where USF Holland authorized him to stay during his layover in Grand Rapids.

Mr. Harper went to bed and slept until a dispatcher from USF Holland called him

---

[1] The parties raised additional issues in the DCN; however, given that the Court is denying workers' compensation benefits based on this threshold issue, it will not consider the remaining issues.

[2] Additional information regarding the technical record and exhibits is attached to this Order as an Appendix.

1

that evening at 7:00 p.m. Upon awakening, he found he was suffering from nausea and feeling light-headed. He called in sick and went to a local hospital to check his blood pressure, which was normal. The next day, his dispatcher instructed him to seek medical care at a local clinic called Med 1 to certify his ability to drive.

As he prepared to take a shower, Mr. Harper pulled off his socks and noticed a red mark on his left leg just above the sock line. On cross-examination, Mr. Harper testified he had stayed at the 131 Motel before, and never had any problems there. He did not notice anything unusual about the motel during his stay. He further testified he never saw any bug or spider while at the motel.

After his shower, Mr. Harper went to Med 1, where he treated with Dr. Nicolas Pietrangelo. (Ex. 2 at 1.) Dr. Pietrangelo opined Mr. Harper was capable of driving back home. *Id.* He also observed that Mr. Harper suffered from a "Rash secondary to some type of bite," and prescribed antibiotics for cellulitis. *Id.*

Mr. Harper testified USF Holland did not let him return home immediately, but instead sent him to Toledo, Ohio. While there, his condition worsened, and USF Holland recommended he seek emergency treatment.

Mr. Harper went to Wood County Hospital in Bowling Green, Ohio on June 18. According to the records, his "Chief Complaint" was "There is something wrong with my leg. Not sure if I got bit by something or what." (Ex. 3 at 1.) The history section states:

> Patient reported that on Tuesday evening he began feeling nauseated and fatigued. He is a truck driver and he reports he never removes his socks when he is on the road. When he did remove his socks on Wednesday, he noted redness and swelling to his left lower extremity. He denies trauma/injury.

*Id.* On examination, Mr. Harper suffered from marked redness and edema in the left lower extremity "with erythema streaking all the way to the groin." The area was marked with blisters, but no bleeding under the skin. *Id.* at 14. Allison Dollman, M.D. diagnosed Mr. Harper with cellulitis, admitted him into the hospital, and treated him with IV antibiotics. *Id.*

While in the hospital, Mr. Harper underwent a variety of diagnostic tests, which were negative. *Id.* at 5, 7, and 14. Dr. Dollman placed Mr. Harper in an "unna boot" and discharged him on June 20. *Id.* She also excused him from work beginning June 18 until he could follow-up with his PCP. *Id.* at 25.

Mr. Harper returned to Tennessee and filed an "Employee Notice of Injury" form with USF Holland. (Ex. 9.) The form asked Mr. Harper to describe the physical

2

conditions that contributed to the injury, and he responded, "Unknown." He also responded "Unknown" to a question asking him to describe other conditions or hazards that contributed to the injury. *Id.*

On June 22, 2015, Mr. Harper saw Dr. Cathy Hammond-Moulton with Concentra for a physical evaluation to determine his ability to drive. (Ex. 4.) Dr. Hammond-Moulton restricted Mr. Harper from driving "a company vehicle due to functional limitations" until he saw his PCP. However, she stated Mr. Harper had reached maximum medical improvement (MMI) as of June 22. *Id.* at 4.

On June 26, Mr. Harper followed up with his PCP, Lisa Kellogg, D.O. (Ex. 5.) Mr. Harper reported he "noticed an area on his leg . . . and felt nauseated and feverish." *Id.* at 1. Dr. Kellogg noted resolving cellulitis and continued Mr. Harper's antibiotics. She referred him to Sumner Wound Care and kept him off work. *Id.* at 3.

On June 30, Mr. Harper saw Dr. John Pinkston with Sumner Wound Care. (Ex. 6.) Dr. Pinkston noted, "About two weeks ago, [Mr. Harper] got what was a small bite he thought on his left lower extremity. It became infected." *Id.* at 1. Dr. Pinkston noted cellulitis of the left calf with multiple small open areas. In his assessment, Dr. Pinkston stated Mr. Harper had a history of "what sounds like some chronic venous stasis, received a bite and got severe cellulitis." *Id.* at 2. Dr. Pinkston kept Mr. Harper off work while he recovered. (Ex. 7 at 2.)

On July 10, Mr. Harper returned to Dr. Pinkston, who noted Mr. Harper had a history of severe cellulitis that was "perhaps following an insect bite." *Id.* at 3. He continued to keep Mr. Harper off work. *Id.* In a July 17 follow-up note, Dr. Pinkston did not refer to causation. *Id.* at 4. He noted the wound had healed, but wanted Mr. Harper to return in two weeks before sending him back to work. *Id.* On July 31, Dr. Pinkston stated Mr. Harper "developed what started as a small bite on his left lower extremity" and progressed into cellulitis. *Id.* at 5. He opined Mr. Harper was at MMI, although he would suffer from chronic venous stasis. *Id.* He returned Mr. Harper back to work with no restrictions. *Id.* at 6.

Mr. Harper filed a Petition for Benefit Determination on September 1, 2015, after USF Holland denied his claim based on compensability. (T.R. 1.) The Court entered an Initial Hearing Order on December 28, 2015. (T.R. 2.) The parties were unable to reach a post-discovery mediated agreement, and the Mediator filed a DCN on October 12, 2015. (T.R. 5.) The Court held a Compensation Hearing on April 18, 2015.

**Findings of Fact and Conclusions of Law**

The Workers' Compensation Law must be interpreted fairly, impartially and consistent with basic principles of statutory construction, favoring neither the employee

nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim "has the burden of proving every element of his case by a preponderance of the evidence." *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987).[3]

Mr. Harper alleges an insect or spider must have bitten him while he was on the road driving for USF Holland, and this bite caused the cellulitis in his left lower extremity. In order to prevail, Mr. Harper must establish by a preponderance of the evidence that an insect did in fact bite him, and the bite "arose primarily out of and in the course and scope of his employment." Tenn. Code Ann. § 50-6-102(12) (2014).

Mr. Harper offered little evidence establishing causation. He did not recount when he was bitten, what might have bitten him, or indeed, whether he was bitten at all. He did not offer any evidence as to whether the 131 Motel had an insect problem; in fact, he candidly admitted he never saw an insect or spider while staying at the motel. At best, Mr. Harper's evidence only leads to the conclusion that he developed symptoms while on his route for USF Holland, and discovered a "mark" on his leg when he pulled off his sock to take a shower.

The documentary evidence is not enough to prove by a preponderance of the evidence that Mr. Harper suffered an insect bite. Dr. Pietrangelo at Med 1 did remark that Mr. Harper suffered from a rash "secondary to some kind of bite" and prescribed antibiotics for cellulitis. (Ex. 2 at 1.) However, the note does not reference any observation of an actual bite mark or puncture wound.

Furthermore, the only reference to a possible bite or puncture mark in the records from Wood County Hospital was in the admission form, where Mr. Harper's "Chief Complaint" was "There is something wrong with my leg. Not sure if I got bit by something or what." (Ex. 3 at 1.) The history section goes on to note "When he did remove his socks on Wednesday, he noted redness and swelling to his left lower extremity. He denies trauma/injury." *Id.* There was no other reference in the hospital records to a bite or puncture wound on Mr. Harper's left lower extremity, or even to the possibility that the cellulitis originated with an insect bite.

When Mr. Harper returned home, he completed an "Employee Notice of Injury Form." (Ex. 9.) On the form, he did not attribute his condition to an insect bite, but instead responded "Unknown" when asked to describe the conditions or hazards that contributed to the injury. *Id.* On June 22, Mr. Harper treated with Dr. Hammond-

---

[3] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

Moulton, but the note does not refer to an insect bite causing Mr. Harper's cellulitis. (Ex. 4.)  Mr. Harper saw his family physician, Dr. Kellogg, on June 26, who also made no reference to an insect bite or puncture wound as the cause of the cellulitis.  (Ex. 5.)

No other record refers to an insect bite until Mr. Harper saw Dr. Pinkston, approximately two weeks after he first became ill; however, even these references are qualified.  On June 30, Dr. Pinkston's note stated Mr. Harper "got what he thought was a small bite[,]" and, Mr. Harper had a history "of what sounds like some chronic venous stasis, received a bite, and got severe cellulitis." (Ex. 6 at 1, 2.)  On July 10, Dr. Pinkston noted that the cellulitis "was perhaps following an insect bite." (Ex. 6 at 3.)  On July 31, Dr. Pinkston made the only affirmative statement regarding causation when he wrote Mr. Harper developed cellulitis that "started as a small bite on his left lower extremity." (Ex. 6 at 5.)

As illustrated, there is little documentation of an insect bite, and nothing to establish a physician, or anyone else, actually observed a bite mark on Mr. Harper's leg.  Therefore, the Court finds Mr. Harper failed to prove by a preponderance of the evidence that he suffered an insect bite that precipitated his cellulitis. *Tindall, supra,* at 937.

Furthermore, even if the proof linked Mr. Harper's cellulitis to an insect bite, the Court finds there is insufficient evidence to establish that the "bite" "primarily arose out of and in the course and scope of employment" with USF Holland. *See* Tenn. Code Ann. § 50-6-102(12) (2014).  As stated earlier, Mr. Harper's only evidence in this regard is that he began experiencing symptoms and first noticed a mark on his leg when he woke up at the motel while working out of state.  As to when the "bite" actually occurred, Mr. Harper offered only speculation and conjecture, which cannot serve as justification for the provision of benefits. *See Shelton v. Torrington Co.,* No. 01S01-9704-CV-00092, 1998 Tenn. LEXIS 133, at *10 (Tenn. Workers' Comp. Panel Mar. 13, 1998) (citing *Reeser v. Yellow Freight,* 938 S.W.2d 690, 692 (Tenn. 1997)).  This premise is particularly true given that the Workers' Compensation Law no longer allows a remedial construction by the court. *See* Tenn. Code Ann. § 50-6-116 (2014).

In addition, medical evidence is generally required in order to establish a causal relationship, "[e]xcept in the most obvious, simple and routine cases." *Cloyd v. Hartco Flooring Co.,* 274 S.W.3d 638, 643 (Tenn. 2008) (quoting *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991)).  Even if Dr. Pietrangelo's record and Dr. Pinkston's note of July 31 were sufficient to prove that Mr. Harper's cellulitis originated from an insect bite, there is no medical proof establishing that the progression of his condition was consistent with the bite primarily arising out of and occurring while he was in the course and scope of his employment.  Thus, the Court finds Mr. Harper failed to provide sufficient medical evidence to establish causation by a preponderance of the evidence. *Cloyd, supra,* at 643.

5

Accordingly, the Court finds Mr. Harper failed to prove he sustained an injury that primarily arose out of and in the course and scope of his employment with USF Holland. *See* Tenn. Code Ann. § 50-6-102(12) (2014). Given the above finding, it is unnecessary to address other issues raised by the parties.

IT IS, THEREFORE, ORDERED that Mr. Harper's request for workers' compensation benefits is denied.

**ENTERED THIS THE 22nd DAY OF APRIL, 2016.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Compensation Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within thirty days* of the date the Workers' Compensation Judge entered the Compensation Hearing Order.

3. Serve a copy of the Compensation Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of**

6

**Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The party filing the notice of appeal, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. Alternatively, the party filing the appeal may file a joint statement of the evidence within fifteen calendar days of the filing of the Compensation Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board. *See* Tenn. Comp. R. & Regs. 0800-02-22-.03 (2015).

6. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Workers' Compensation Appeals Board, the appeal will be docketed and assigned to an Appeals Board Judge for review. At that time, a docketing notice shall be sent to the parties. Thereafter, the parties have fifteen calendar days to submit briefs to the Appeals Board for consideration. *See* Tenn. Comp. R. & Regs. 0800-02-22-.02(3) (2015).

7. If neither party appeals the judgment to the Board of Appeals within thirty days of its entry by the Trial Court, the judgment becomes final. Either party may then appeal directly to the Tennessee Supreme Court. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2015). Please review the Tennessee Rules of Appellate Procedure for specific information on procedure. *See* Tenn. Code Ann. § 50-6-225 (2015).

# APPENDIX

Exhibits:

1. First Report of Injury;
2. Medical Records from Med 1;
3. Medical Records from Wood County Hospital;
4. Medical Records from Concentra;
5. Medical Records from Lisa Kellogg, D.O.;
6. Medical Records from Sumner Wound Center;
7. Medical bills;
8. Various photographs of Mr. Harper's left leg;
9. Employee Notice of Injury Form;
10. Job Description; and,
11. Mr. Harper's payroll summary;
12. Excerpt from Union Agreement; and,
13. Deposition of Mr. Harper.

Technical Record:

1. Petition for Benefit Determination;
2. Initial Hearing Order;
3. Mr. Harper's Pre-Compensation Hearing Statement;
4. USF Holland's Pre-Compensation Hearing Statement;
5. Dispute Certification Notice; and,
6. USF Holland's Pre-Trial Brief.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order Denying Benefits was sent to the following recipients by the following methods of service on this the 22nd day of April, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|---------|---------|-----------|------------------|
| Randall Harper | X | | X | randharper2@gmail.com |
| Stephen Heard | | | X | skheard@cornelius-collins.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

9