FILED

**December 12, 2016**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 11:56 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| SUSAN ENGLISH, | ) | Docket No.: 2016-05-0261 |
| Employee, | ) | |
| v. | ) | State File No.: 98712-2015 |
| | ) | |
| G4S SECURE SOLUTIONS, | ) | Judge Robert Durham |
| Employer, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| NEW HAMPSHIRE INS. CO., | ) | |
| Insurance Carrier. | ) | |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS

---

This cause came before the undersigned Workers' Compensation Judge on December 2, 2016, upon the Request for Expedited Hearing (REH) filed by the employee, Susan English, on November 9, 2016, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Ms. English filed the Request to provide additional evidence to establish her likelihood in proving at trial that her fall at work on December 2, 2015, was not idiopathic, as the Court found after the initial Expedited Hearing held on August 2, 2016.[1]

The dispositive issue is whether Ms. English sustained injuries on December 2, 2015, that arose primarily out of and in the course and scope of her employment with

---

[1] Following the first Expedited Hearing, the Court issued an Order denying Ms. English's request for benefits on the grounds that Ms. English failed to establish the likelihood of proving her fall on December 2, 2015, was causally related to her employment. That Order, as well as the transcript of the hearing and the exhibits entered into evidence, are incorporated by reference in this Order. In determining this claim, the Court takes judicial notice of testimony heard and exhibits admitted into evidence at the prior in-person Expedited Hearing. *See Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 457 n.1 (Tenn. 2012), holding, "we are permitted to take judicial notice of the facts from earlier proceedings in the same action."

1

G4S. If so, a secondary issue is whether the December 2, 2015 fall caused her injuries on March 2, 2016. The Court holds Ms. English did not provide sufficient evidence to establish she is likely to prevail at a hearing on the merits that she sustained injuries that arose primarily out of and in the course of her employment on December 2, 2015.[2]

## History of Claim

At the original hearing, Ms. English testified the weather on December 2, 2015, had been "crummy" and, as she left the premises to go to her car, she had to walk on a paved area covered in leaves that had fallen from the trees surrounding the parking lot. At the second hearing, Ms. English provided pictures taken from the front of the building where she worked that show a tree-lined sidewalk adjacent to the area where she was parked with fallen leaves on and around the sidewalk. (Ex. 20.)

At the August 2 hearing, Ms. English testified that she "did literally just slip and trip and fall – it was out on the sidewalk." (Ex. 14 at 30.) However, she then testified that as she "proceeded on the sidewalk, which I slipped on the leaves and was down. I don't know how long I was unconscious. I do not remember literally falling." (Ex. 14 at 31.) She further admitted to being "very much dazed" because "all she could even recall to this day" was the voice of Mr. Singley, an employee at the same premises who helped her up from the ground. *Id.* She testified Mr. Singley asked her what happened and she responded that she supposed she slipped on the leaves on the sidewalk. *Id.* at 32.

On cross-examination of Ms. English at the August 2 hearing, the following exchange occurred:

> Q: I just want to clarify a few things. The first is, the December 2015 fall, back when you fell at work. You testified that you remembered some leaves being on the ground and that you don't remember anything until you woke up. So, I wanted to clarify. You don't actually remember slipping on leaves or tripping on an object?
>
> A: No, there was – the whole street is covered by big oak trees. The leaves held on way into the season. There was leaves all over. I mean, the sidewalks were totally covered with them. Even though you would try and – there was no clear path.
>
> Q: I understand.
>
> A: There was leaves.

---

[2] Given this holding, the Court need not address whether the injuries Ms. English's fall on March 1, 2016, were caused by injuries sustained in her fall on December 2, 2015.

Q:     And I understand leaves can be slippery.  But you – you don't actually remember actually slipping on leaves?  You just assumed –

A:     The report is all – excuse me.  Okay.  Let me go again.  They were all over on the sidewalk.  So –

Q:     Okay.  But my question is, did you remember physically slipping on the leaves?

A:     Yeah, it would – yeah.

Q:     You do remember that?

A:     Uh-huh (Affirmative).

Q:     So, when you told Mr. Singley that you supposed that you slipped on the leaves, is that correct?

A:     Well, I mean, there was leaves all over.  And there was no incline or anything.  You know, it had to have been the leaves.

Q:     Okay.  I understand what you're saying.  You're assuming that because there were leaves there, that you fell on the leaves.  Is that a correct statement?

A:     Well, yes.  Uh-huh (Affirmative).

(Ex. 14 at 75, 76.)

In the affidavit attached to her original REH, Ms. English recounted the incident in more detail. (Ex. 8 at 1.)  She stated it rained earlier that day and wet leaves covered much of the parking lot.  She stated the last thing she remembered was "trying to avoid piles of wet leaves while walking to her car." *Id.*  However, she again conceded she did not remember the actual fall.  Specifically, she stated: "I don't remember the actual fall; one minute I was walking across the parking lot, and the next thing I know I am regaining consciousness laying on my right side in the parking lot next to the curb." *Id.*

At the August 2 hearing, Ms. English also submitted several medical records that recorded her description of the accident to various providers.  On the day of the incident, St. Thomas Murfreesboro hospital's emergency room noted that Ms. English stated the accident occurred because she "missed a step and fell off a curb." (Ex. 2 at 8.)  The following week, she related to Dr. William Dutton that she fell "after slipping on wet

3

leaves," and the accident caused her to lose consciousness after striking her head. (Ex. 3 at 1.)

Ms. English also testified she fell again on March 1, 2016, in a parking lot at a shopping mall when her right knee simply "gave way." Her testimony received corroboration from Kim Morrissey, a witness who provided an affidavit stating that Ms. English's knees "appeared to buckle." (Ex. 12.)

Following the Court's decision after the first hearing that Ms. English's December 2, 2015 fall was idiopathic in that there was insufficient evidence to explain the cause of the fall, the Court held another Expedited Hearing on December 2, 2016, to address this issue further. At the hearing, Ms. English testified she felt her right foot slip in the leaves on the sidewalk during the process of walking and pushing off with her right foot. She stated that, as she fell, she flung her arms out to grab something to steady herself, which caused her purse to be thrown forward from her body. Ms. English repeatedly stated she "felt her right foot slip" before she fell.

In addition to her testimony, Ms. English also provided an affidavit in support of her REH. (Ex. 16.) In the affidavit, Ms. English stated that, while she was not "100% certain as to the exact sequence of [her] fall," she knew that as she walked toward her car "she felt [herself] slip on the wet leaves." *Id.* Ms. English also stated in the affidavit that she lost consciousness after falling to the sidewalk. *Id.*

When asked on cross-examination how she could reconcile this testimony with the testimony provided at the first hearing, Ms. English averred she did not understand the exact information being sought at the first hearing and was unaware of the significance of her answer. She thought it was obvious she slipped on wet leaves and did not see the need to testify explicitly to that fact. She further testified that she now remembered slipping in the leaves after taking time to reflect and meditate on the issue.

In addition to her testimony, Ms. English also submitted the affidavit of Will Singley, the man who helped her up after her fall. (Ex. 15.) In the affidavit, Mr. Singley stated that, as he walked outside the building, he saw Ms. English "slip/slide" on the sidewalk and fall onto the curb. *Id.* The affidavit further states Ms. English appeared to be dazed from the fall. *Id.* In response to this affidavit, G4S offered for impeachment purposes an email from Mr. Singley to Ms. English dated February 17, 2016, which contained the following language: "I saw you trip/slide stepping from the sidewalk in the no parking zone right in front of the building." (Ex. 21.) When asked if she could explain the difference between "slip/slide" and "trip/slide," Ms. English testified she might have slipped and then tripped while trying to regain her balance; however, she admitted that she could not remember doing so.

Finally, Ms. English called Robert Bishop, a supervisor at G4S, to testify at the

4

hearing. Mr. Bishop testified he was outside inspecting a vehicle when Ms. English fell. However, he did not see her fall, but only witnessed her lying on the ground. He testified he asked her several times if she was okay, but she never responded to him. She left without speaking and drove off in her car. Mr. Bishop testified he did not seek medical attention for her or file an accident report because he assumed she was okay when she did not respond to him. He admitted he did not question Mr. Singley as to what he witnessed regarding Ms. English's fall.

Ms. English contends the evidence clearly proves she slipped on wet leaves while leaving work, thus establishing she is likely to prevail at trial regarding the causal relationship between her employment and her fall on December 2, 2015. G4S contends the additional evidence is contradictory to the evidence offered by Ms. English at the first hearing and does little to counter the Court's earlier finding that Ms. English's fall was idiopathic, thus rendering her injuries non-compensable.

### Findings of Fact and Conclusions of Law

The Court considers the following legal principles in reaching its conclusions in this matter. The Court must interpret the Workers' Compensation Law fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). Ms. English has the burden of proof on all essential elements of her workers' compensation claim. *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

Ms. English need not prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Ms. English has the burden to come forward with sufficient evidence from which the trial court can determine she is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

In its Order dated August 12, 2016, the Court found that the injury Ms. English sustained on December 2, 2015, was idiopathic. "An idiopathic injury is one that has an unexplained origin or cause, and generally does not arise out of the employment unless some condition of the employment presents a peculiar or additional hazard." *McCaffery v. Cardinal Logistics*, No. 2015-08-0218, 2015 TN Wrk. Comp. App. Bd. LEXIS 50, at

5

*9 (Tenn. Workers' Comp. App. Bd. Dec. 10, 2015) (citations omitted). An idiopathic injury is only compensable if the "accident originated in the hazards to which the employee was exposed as a result of performing his job duties." *Id.* at *10.

As stated in the previous Order, if Ms. English proved she slipped on wet leaves in the parking lot while walking to her car, then there is little doubt she could establish the fall arose from a "peculiar or additional hazard" necessary to establish causation. Ms. English testified at the second hearing that she did in fact slip on wet leaves and provided an affidavit from Mr. Singley that he saw her "slip/slide" on the sidewalk. However, the Court, when considering the evidence as a whole, is still not persuaded Ms. English has met her burden in establishing she is likely to prevail at trial on this issue.

The Court finds Ms. English clearly testified, both in the affidavit submitted with her original REH and at the August hearing, that she could not remember actually slipping on the leaves, but simply assumed she had done so because of the leaves on the ground. This evidence is corroborated by the differing accounts of the accident she gave to various health care providers.

The Court further finds Ms. English's attempt to retract or modify this testimony at the second hearing unpersuasive. G4S's counsel's questions during the original hearing regarding the issue were clear and unequivocal and Ms. English was given every opportunity to explain her answers. She may not have realized the implications of her answers, but it is this very ignorance that renders her original testimony more credible.

Ms. English did provide corroborative evidence through Mr. Singley's testimony that he saw her "slip/slide" on the sidewalk. However, the Court gives little weight to a lone phrase contained in an affidavit prepared by Ms. English that is not subject to elaboration or cross-examination. This is particularly true given that the phrase contained in Mr. Singley's original email to Ms. English was "trip/slide." Furthermore, Ms. English could not remember if she tripped or not, again tending to prove she could not actually remember her fall. Finally, Ms. English testified at the August hearing that, when he was helping her stand, Mr. Singley asked her what happened, which tends to establish that he did not see what caused her to fall. Under the circumstances, Mr. Singley's affidavit is not sufficient to persuade the Court that Ms. English is likely to prevail in proving that her fall on December 2, 2015, was not idiopathic.

At this point, Ms. English has still only offered speculation and conjecture as to the cause of her December 2, 2015 fall, which cannot serve as justification for the provision of benefits. *See Shelton v. Torrington Co.,* No. 01501-9704-CV-00092, 1998 Tenn. LEXIS 107995, at *10 (Tenn. Workers' Comp. Panel Mar. 13, 1998) (citing *Reeser v. Yellow Freight,* 938 S.W.2d 690, 692 (Tenn. 1997)). This premise is particularly true given that the Workers' Compensation Law no longer allows a remedial construction in favor of the employee. Tenn. Code Ann. § 50-6-116 (2015).

6

Therefore, the Court must hold at this time that Ms. English is unlikely to prevail at a hearing on the merits in proving that any injuries she sustained from her fall on December 2, 2015, arose primarily out of and in the course and scope of her employment. *Id.* Given this holding, it is unnecessary for the Court to determine what, if any, injuries Ms. English sustained from the March 1, 2016 fall were causally related to the December 2, 2015 fall.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. English's request for workers' compensation benefits is denied at this time.

2. This matter is set for a Scheduling Hearing/Status Conference on January 26, 2017, at 9:30 a.m. C.T.

**ENTERED THIS THE 12TH DAY OF DECEMBER, 2016.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

**Scheduling Hearing/Status Conference:**

A **Scheduling Hearing/Status Conference has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:

1. First Report of Injury
2. Medical Records from St. Thomas Rutherford Hospital
3. Medical records from Concentra Medical Center
4. Medical records from Dr. Erik Motsenbocker
5. Medical records from Southern Hills Medical Center
6. Medical records from Dr. William C. Mayfield
7. Medical report of Dr. Sean Kaminsky
8. Affidavit of Susan English
9. Letter from Dr. Mayfield
10. Affidavit of Elizabeth Leonberger
11. Affidavit of Chelsey Stafford
12. Affidavit of Kim Morrisey
13. Wage Statement
14. Transcript of August 2, 2016 hearing
15. Affidavit of Will Singley
16. Affidavit of Susan English
17. Wage Statement
18. Affidavit of Chelsey Stafford
19. Diagram of accident scene
20. Photographs of accident scene
21. Email from Will Singley to Susan English

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. G4S' Motion to Extend Time for Submission of Records
5. Agreed Order
6. G4S' Pre-Hearing Brief
7. Order Denying Medical Benefits
8. Request for Expedited Hearing
9. Notice of Expedited Hearing
10. Subpoena for Robert Bishop
11. Ms. English's Motion to Compel Discovery

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Benefits was sent to the following recipients by the following methods of service on this the 12th day of December, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Susan English | X | | X | 121 Cedar Ridge Drive<br>Lavergne, TN 37086<br>Susan_English@comcast.net |
| Sarah Best | | | X | SHBest@mijs.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov