**FILED**

**September 7, 2017**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

**Time 8:29 AM**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MEMPHIS

| | | |
|---|---|---|
| **KINE GUEYE,** | ) | **Docket No.: 2016-08-0701** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 29588-2015** |
| **FEDERAL EXPRESS CORP.,** | ) | |
| **Employer.** | ) | **Judge Robert Durham** |

---

## COMPENSATION HEARING ORDER DENYING BENEFITS

---

This cause came before the undersigned Workers' Compensation Judge on August 31, 2017, for a Compensation Hearing on the issues of compensability, medical benefits, and temporary and permanent disability benefits. Given that Federal Express stipulated Ms. Gueye sustained a compensable low back injury on April 9, 2015, for which she is entitled to reasonable medical treatment, the dispositive issue is whether Ms. Gueye's complaints of muscle weakness, paresthesia, dizziness, ataxia, and "brain compression" causally relate to this work injury and entitle her to additional medical and temporary or permanent disability benefits. The Court holds Ms. Gueye did not prove that her current complaints arose primarily out of and in the course and scope of her work injury and as a result she is not entitled to the requested benefits.[1]

### History of Claim

Ms. Gueye fell and sustained a low back injury while working for Federal Express on April 9, 2015. Federal Express provided treatment with the authorized treating physician (ATP), Dr. Arsen Manugian, who released her at maximum medical improvement on June 25, 2015, with no restrictions or permanent impairment for the low back strain. He felt her continued low back and leg pain were due to her pre-existing spondylosis rather than the low back strain.

---

[1] At the end of Ms. Gueye's proof, Federal Express moved for an involuntary dismissal under T.R.C.P. 41.02(2) on the basis that Ms. Gueye failed to provide proof regarding the benefits she sought. However, given its stipulation that she sustained a compensable low back injury, which entitles her to reasonable and necessary treatment through the authorized physician, Dr. Arsen Manugian, Federal Express' motion is denied.

However, Ms. Gueye continued to complain of multiple physical ailments, such as headaches, muscle weakness, paresthesia, dizziness, ataxia, and "brain compression," which she attributed to her work-related fall. She received unauthorized treatment with Dr. Manugian and several other physicians for these asserted ailments. At the Expedited Hearing, Ms. Gueye testified about these complaints and introduced voluminous medical records regarding her evaluation and treatment. Her testimony and medical history are set out in the Expedited Hearing Order and incorporated by reference.[2]

At the Compensation Hearing, Ms. Gueye again testified that she did not experience any leg pain, headaches, or neurological problems other than Bell's Palsy prior to her accident, but she began experiencing them shortly afterwards. She also introduced records from neurologist Dr. Tulio Bertorini dating from July 31, 2016, through July 10, 2017. While documenting Ms. Gueye's complaints, Dr. Bertorini could not determine their cause, and on July 10, stated he did not have a "better diagnosis for her neurological complaints." Federal Express did not introduce any evidence.

### Findings of Fact and Conclusions of Law

Ms. Gueye has the burden of proof on all essential elements of her workers' compensation claim. *Scott v. Integrity Staffing* Solutions, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). "[A]t a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015)

Here, Federal Express stipulated that Ms. Gueye suffered a low back injury on April 9, 2015, and agreed to provide related future medical care as ordered by the ATP, Dr. Manugian. However, Dr. Manugian released Ms. Gueye to return to work with no restrictions or impairment, finding that she fully recovered from the low back strain causally related to her work injury. Thus, the question is whether Ms. Gueye proved that her other complaints, i.e., headaches, neck pain, upper and lower extremity pain and numbness, and generalized weakness, causally relate to her work injury. Upon review of the record, the Court holds she did not.

In order to establish causation, Ms. Gueye must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2016). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all

---

[2] The Court takes judicial notice of testimony heard and exhibits admitted into evidence at the prior in-person Expedited Hearing. *See Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 457 n.1 (Tenn. 2012), holding, "we are permitted to take judicial notice of the facts from earlier proceedings in the same action."

causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D). Thus, causation must be established by expert medical testimony, and it must be more than "speculation or possibility" on the part of the doctor. *Id.*

Ms. Gueye conceded that Dr. Manugian's opinion on causation is entitled to a presumption of correctness, rebuttable by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E). As to Ms. Gueye's low back and leg complaints, Dr. Manugian stated that her underlying spondylolysis pre-existed her work injury and he found no evidence of an acute injury to her lumbar spine. He also felt her leg weakness was unrelated to the work injury.

As to Ms. Gueye's other complaints, the thrust of her argument is that she only began experiencing these symptoms after her fall. However, even if correct, this evidence alone is insufficient to prove these symptoms are work-related. Medical evidence is generally required in order to establish a causal relationship, "[e]xcept in the most obvious, simple and routine cases." *Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 643 (Tenn. 2008).

Numerous physicians evaluated Ms. Gueye, including three neurologists and a neurosurgeon. The only physician to address a causal connection between her condition and her work injury was Dr. Bertorini, who had no explanation for her complaints. Thus, even if her symptoms began after April 9, 2015, the Court holds Ms. Gueye failed to prove these complaints arose primarily out of and in the course and scope of her employment.

Therefore, as a matter of law, the Court holds Ms. Gueye is entitled to future medical treatment by an authorized treating provider as reasonably necessary for her work-related low back strain. Additionally, because Ms. Gueye did not offer any evidence of entitlement to additional temporary disability benefits or permanent partial disability benefits resulting for her compensable low back strain, her request for these benefits is denied. Finally, Ms. Gueye did not prove that her current complaints arise primarily out of and in the course and scope of her employment with Federal Express, and she is not entitled to any workers' compensation benefits for them.

**IT IS, THEREFORE, ORDERED** as follows:

1.  With the exception of any reasonable and necessary medical treatment Ms. Gueye may require from Dr. Manugian for her work-related low back strain, Ms. Gueye's request for workers' compensation benefits is denied.

2.  This Compensation Order constitutes a final adjudication upon the merits of Ms. Gueye's claim for benefits.

3

3. The $150.00 filing fee for this cause is taxed to Federal Express under Rule 0800-02-21-.07 of the Tennessee Compilation Rules and Regulations.

4. Federal Express shall prepare and file a Statistical Data Form within ten business days of the date of entry of this Order.

**ENTERED THIS THE 7 TH DAY OF SEPTEMBER, 2017.**

Robert V. Durham, Judge
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:

1. Letter from Dr. Bertorini
2. Ms. Gueye's affidavit
3. Medical records submitted by Federal Express
4. New Hire Orientation Class Form
5. Denial Letter from Sedgwick James
6. Medical records submitted by Ms. Gueye
7. Initial C-42 form
8. Second C-42 form
9. Return to work form provided by PCS
10. Accident Report
11. Wage Statement
12. Mileage Statement
13. First Report of Injury
14. Additional Medical Records
15. Updated records from Dr. Bertorini

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Federal Express's Position Statement
5. Post-Mediation Dispute Certification Notice

4

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Compensation Hearing Order Denying Benefits was sent to the following recipients by the following methods of service on this the __7__ th day of September, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Kine Gueye, Self-Represented Employee | X | | X | 10407 Redmond Drive Cordova, TN 38016 Kinegueye7@gmail.com |
| Joseph M. Fletcher, Employer's Attorney | | | X | jfletcher@lewisthomason.com |

_Penny Shrum_

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

5

FILED

January 26, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 1:21 PM



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

KINE GUEYE, ) Docket No.: 2016-08-0701
      Employee, )
v. ) State File No.: 29588-2015
     )
FEDERAL EXPRESS CORP., ) Judge Robert Durham
      Employer, )

---

## EXPEDITED HEARING ORDER DENYING BENEFITS

---

This cause came before the undersigned Workers' Compensation Judge on January 11, 2017, upon the Request for Expedited Hearing (REH) filed by, Kine Gueye. Given that Federal Express stipulated Ms. Gueye sustained a compensable low back injury on April 9, 2015, for which she is entitled to reasonable medical treatment, the dispositive issue is whether Ms. Gueye's complaints of muscle weakness, paresthesia, dizziness, ataxia, and "brain compression" causally relate to this work injury. The Court holds Ms. Gueye did not provide sufficient evidence to establish she is likely to prevail at a hearing on the merits that these complaints arose primarily out of and in the course of her employment.

### History of Claim

Ms. Gueye, a thirty-seven-old native of Senegal, began working for Federal Express on March 27, 2015. On April 9, 2015, Ms. Gueye was unloading boxes from a conveyor belt when a number of boxes coming down the belt forced her backwards, causing her to fall onto a box and injure her low back. Ms. Gueye reported the incident, and Federal Express provided a panel from which she chose Dr. Jeffrey Lowery. (Ex. 6 ;Ex. 3 at 23.) Dr. Lowery diagnosed Ms. Gueye with a lumbar strain with numbness, placed her on restricted duty, and recommended she see an orthopedist. (Ex. 3 at 24.)

Federal Express provided a panel of orthopedists, and Ms. Gueye chose Dr. Arsen Manugian. (Ex. 7.) Dr. Manugian noted Ms. Gueye complained of low back pain

1

without radiation. He also noted she had a history of Bell's Palsy and complaints of a headache as well as numbness or tingling and weakness in her arms and/or legs. Ms. Gueye testified that she informed Dr. Manugian she also suffered from neck pain, although the record does not note it. Dr. Manugian diagnosed her with a lumbar sprain, ordered physical therapy, and placed her under several work restrictions. (Ex. 3 at 26-27.)

On May 1, the physical therapist noted Ms. Gueye's "back and neck pain actually feel much better," and Ms. Gueye stated she was ready to return to work. (Ex. 3 at 43.) Dr. Manugian released Ms. Gueye to return to regular duty on May 4. She returned a week later complaining of increased low back pain with radiation into her right buttock and thigh. Ms. Gueye stated, as she also testified at the hearing, that she suffered increased pain following a heavier workload upon her return to regular duty. Dr. Manugian placed her back under work restrictions and ordered a lumbar MRI. (Ex. 3 at 48.) The MRI revealed unilateral L5 spondylosis without spondylolisthesis or foraminal stenosis, a mild disc bulge at L4-5, and a small lesion on the right iliac bone adjacent to the S1 joint that suggested a benign cyst. (Ex. 3 at 52.)

Dr. Manugian noted he attempted to explain to Ms. Gueye that the spondylolysis pre-existed her work injury. He recommended a bone scan of the lumbar spine to determine if there was any "obvious activity" that revealed an acute injury. (Ex. 3 at 53.) The bone scan showed normal uptake and no focal lesions in the lumbar spine, pelvis, or sacroiliac joints. (Ex. 3 at 50.)

Ms. Gueye returned to work. She testified that on June 10, a loud noise startled her and she thought something was going to fall on top of her. She ran away and immediately began suffering from severe neck and back pain. She notified her supervisor, who arranged for her to be taken to the emergency room, where she was treated for back and leg pain. (Ex. 3 at 54.) The following day, Ms. Gueye returned to Dr. Manugian, where she explained that, after running, she experienced "shivering" in both legs, but by the time she actually saw a physician at the emergency room, the spasms had resolved. However, she was still experiencing low back pain, and she reiterated she did not have any problems prior to her work injury. (Ex. 3 at 59.)

Dr. Manugian noted he had "great difficulty" persuading Ms. Gueye that, while she suffered a resolving back strain on April 9, the spondylosis pre-existed her injury and was not active. He further stated the leg symptoms that precipitated her emergency room visit were not directly related to her back injury, and Ms. Gueye had a hard time accepting this as well. (Ex. 3 at 60.) Dr. Manugian saw her again on June 25. Ms. Gueye complained of pain in her low back that extended into her mid-back and cervical area. Dr. Manugian noted no radicular signs and stated she had no impairment and could return to work at regular duty. He further stated he did not need to see her again on a regular basis. (Ex. 3 at 61.)

2

On July 17, without authorization from Federal Express, Ms. Gueye saw her primary care physician, Dr. Jewel Harris, who wrote a note stating that Ms. Gueye suffered from pain and weakness in her thighs that was "likely related to recent back injury." Dr. Harris took Ms. Gueye off work from July 17 through July 30 and continued physical therapy. (Ex. 6 at 73-74.) Federal Express authorized Ms. Gueye to return to Dr. Manugian. He again noted no objective abnormalities regarding her low back, and he recommended she return to regular duty, but if she could not do that, to find less strenuous work. He repeated he did not need to see her on a regular basis. (Ex. 6 at 78.)

Ms. Gueye then returned to Dr. Harris on her own, who kept her off work and referred her to Manuel Carro, a neurologist. (Ex. 6 at 80.) At his evaluation, Dr. Carro noted Ms. Gueye complained of a history of migraines, low back pain and "burning dysesthesias" in her feet, as well as numbness in her extremities. Dr. Carro ordered x-rays and a nerve conduction study of her lower extremities. (Ex. 6 at 81-83.) Afterwards, Dr. Carro noted the nerve conduction studies were normal and the lumbar x-rays did not reveal any instability. He recommended medication and additional physical therapy for chronic back pain. (Ex. 6 at 85-86.)

On October 28, Ms. Gueye underwent a brain CT scan following an unauthorized ER visit due to complaints of severe headaches and right-sided neck pain. The CT scan showed no acute findings and no changes were noted when compared to one taken in March 2015. However, a cervical spine CT scan did reflect a possible Chiari I malformation in the cerebellum. (Ex. 6 at 91-93.)

Ms. Gueye was then referred to Dr. Jason Weaver, a neurosurgeon, to evaluate the possible Chiari I malformation. Dr. Weaver noted Ms. Gueye complained of suboccipital headaches and occasional numbness and tingling in her arms, as well as low back pain and a host of other physical complaints. Dr. Weaver found no abnormalities on exam and ruled out a Chiari malformation but stated that her cerebellar tonsils accounted for the perceived abnormality. He found no reason for surgery but referred her to another neurologist, Dr. Lihong Shen. (Ex. 6 at 96-97.)

Dr. Shen noted Ms. Gueye claimed to have a long history of "mild headaches" but developed "severe headaches" a few months earlier. She also complained of continued low back pain that radiated to her thighs and caused weakness and tremors, as well as numbness from her mid-calves to her feet. Dr. Shen felt her headaches were consistent with a Chiari malformation and noted she could suffer from carpal tunnel syndrome, but could not explain Ms. Gueye's weakness complaints. (Ex. 6 at 101.) She ordered an NCS, which was positive for bilateral carpal tunnel syndrome but showed no signs of radiculopathy or myopathy. Ms. Gueye's blood work was normal.

Dr. Shen also reviewed Ms. Gueye's history and noted neurological complaints since 2008. According to a record from Dr. Michael Deshazo dated May 29, 2008, Ms.

3

Gueye complained of recurrent episodes where she felt like she could not move or talk for up to two hours. Dr. Deshazo noted she had a previous history of Bell's Palsy and observed some of her symptoms were "very unusual." (Ex. 6 at 113.) He ordered an MRI that revealed no significant abnormalities. (Ex. 6 at 118.) In 2012, Ms. Gueye treated with Dr. Yaohui Chai for intermittent right facial twitch, headaches and neck pain. Upon review, Dr. Shen noted Ms. Gueye's 2012 MRI showed Chiari features similar to the ones in the 2015 MRI. Ms. Gueye told her she did not have any muscle weakness in 2012, but it started in her legs after her fall in April 2015 and spread to her arms a few weeks later. Dr. Shen ordered additional tests, which were negative. (Ex. 6 at 121.)

Ms. Gueye was referred to another unauthorized neurologist, Dr. Tulio Bertorini, on March 11, 2016. After an exam and file review, he felt her symptoms might be non-organic in nature, and found her neurologic exam to be unremarkable. (Ex. 6 at 145.) Ms. Gueye returned to Dr. Shen and stated her headaches were much better, but her limb weakness remained the same. Dr. Shen stated Ms. Gueye's Chiari formation was "definitely contributing" to her headaches. (Ex. 6 at 167.) On September 1, 2016, Dr. Bertorini wrote a letter stating he evaluated Ms. Gueye following her fall at work with "boxes falling on her," and she had several complaints, but there was "no clear anatomical cause for this." He stated these symptoms began with the work accident. Ex. 6 at 170.

Ms. Gueye testified she now suffers from symptoms involving headaches, back and neck pain, and generalized weakness and numbness that she did not have prior to her work injury. these conditions keep her from being physically active and create difficulty concentrating. She testified she complained of neck and back pain from the outset. She also had headaches, which could be attributable to the accident. Federal Express introduced an MRI taken on March 8, 2015, two weeks before Ms. Gueye began working for Federal Express, because of complaints of headaches, right-sided facial droop and slurred speech. (Ex. 3 at 22.) Despite this record, as well as the records from 2008 and 2012, Ms. Gueye denied she had any neurologic problems, other than Bell's Palsy prior to her work-related injury.

### Findings of Fact and Conclusions of Law

Ms. Gueye has the burden of proof on all essential elements of her workers' compensation claim. *Scott v. Integrity Staffing* Solutions, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015).

Ms. Gueye need not prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). At an expedited hearing, she has the burden to come forward with sufficient evidence from which the trial court can determine she is likely to prevail at a hearing on the merits. *Id.*

4

Applying these standards, Federal Express does not dispute Ms. Gueye's contention that she suffered an injury to her low back on April 9, 2015, and it agrees to provide future medical care for that injury as ordered by Dr. Manugian. However, Dr. Manugian has released Ms. Gueye to return to work with no restrictions or impairment, opining that she has fully recovered from the low back strain causally related to her work injury. Thus, the question is whether Ms. Gueye has established she is likely to prevail in proving her other complaints causally relate to her work injury, thus entitling her to workers' compensation benefits for those conditions. *McCord* at 7-8, 9. Upon review of the record, the Court holds the evidence presented by Ms. Gueye is insufficient to do so.

In order to establish causation, an employee must prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2016). The term "reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2016). Thus, causation must be established by expert medical testimony, and it must be more than "speculation or possibility" on the part of the doctor. *Id.*

Ms. Gueye does not dispute that Dr. Manugian is an authorized doctor, and thus his opinion on causation is entitled to a presumption of correctness that can only be rebutted by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E) (2016). His opinions only reference Ms. Gueye's low back and leg complaints. With regard to these conditions, he concluded that her underlying spondylolysis pre-existed her work injury and there was no evidence of an acute injury to her lumbar spine. He also concluded her current complaints of leg weakness do not directly relate to the work injury.

Regarding Ms. Gueye's numerous other complaints, Dr. Manugian's records do not specifically address them. However, she testified she told him about suffering from these conditions. Her testimony is somewhat corroborated by Dr. Manugian's records, as well as those from physical therapy, which make oblique references to headaches, numbness and neck pain. This evidence tends to bolster Ms. Gueye's argument that she is at least entitled to receive a panel of physicians for diagnosis and possible treatment of these conditions. *See*, Tenn. Code Ann. § 50-6-204 (2016).

However, the Court finds this evidence alone is insufficient to establish Ms. Gueye is likely to prevail at trial even with regard to the provision of a panel of physicians. Medical evidence is generally required in order to establish a causal relationship, "[e]xcept in the most obvious, simple and routine cases." *Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 643 (Tenn. 2008). In Ms. Gueye's case, a number of physicians treated her, including three neurologists and a neurosurgeon, subsequent to her release by Dr. Manugian, and subjected her to a multitude of tests and evaluations. The only physician

5

to address a causal connection between her condition and her work injury is Dr. Bertorini. He stated she had several complaints but there was "no clear anatomical cause for this." He further stated these symptoms began with the work accident; however, even if true, this is far from proving Ms. Gueye is likely to prevail at trial in proving these complaints primarily arose out of and in the course and scope of her work-related accident.

Moreover, Federal Express introduced evidence that casts doubt upon her assertion that her symptoms only began after April 9, 2015. Although Ms. Gueye adamantly denied any neurologic symptoms other than Bell's Palsy prior to her work injury, she complained of temporary paralysis and other "unusual complaints" in 2008. In 2012, she complained of "intermittent facial twitching, headaches and neck pain," for which she underwent a brain MRI. Finally, only a few weeks before she began working for Federal Express, Ms. Gueye visited the ER complaining of facial drooping, headaches, and slurred speech. While Ms. Gueye maintains these symptoms were due to Bell's Palsy, there is no medical evidence to confirm her assertions, or indeed establishes she even suffers from Bell's Palsy.

Finally, Ms. Gueye emphasized during her argument that her post-injury brain MRI reveals "brain compression"[1] that was not in the 2012 MRI and that Dr. Shen definitely attributed her headaches to the Chiari 1 malformation. However, Dr. Shen stated she noted the same "Chiari features" when reviewing the 2012 MRI film. Furthermore, Dr. Weaver, a neurosurgeon, opined she did not suffer from a Chiari I malformation. However, even if she does, no physician has opined that the "brain compression" resulted from her work injury.

At this point, Ms. Gueye has only offered speculation and conjecture as to the cause of her numerous symptoms, which cannot serve as justification for the provision of benefits. *See Shelton v. Torrington Co.*, No. 01501-9704-CV-00092, 1998 Tenn. LEXIS 107995, at *10 (Tenn. Workers' Comp. Panel Mar. 13, 1998) (citing *Reeser v. Yellow Freight*, 938 S.W.2d 690, 692 (Tenn. 1997)).

Therefore, Ms. Gueye may seek further treatment from Dr. Manugian for her work-related low back strain incurred on April 9, 2015 if she and Dr. Manugian feel it is reasonable and necessary that she do so. However, the Court holds at this time that Ms. Gueye is unlikely to prevail at a hearing on the merits in proving that her other current complaints arose primarily out of and in the course and scope of her employment with Federal Express.

**IT IS, THEREFORE, ORDERED** as follows:

1. With the exception of any reasonable and necessary medical treatment Ms. Gueye

---

[1] The Court assumes this refers to the "Chiari 1 malformation" noted in the 2015 MRI.

may require from Dr. Manugian for her work-related low back strain incurred on April 9, 2014, Ms. Gueye's request for workers' compensation benefits is denied at this time.

2. This matter is set for a Scheduling Hearing/Status Conference on March 8, 2017, at 2:00 p. m. C.T.

**ENTERED THIS THE 2G<sup>TH</sup> DAY OF JANUARY, 2017.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

**Scheduling Hearing/Status Conference:**

A Scheduling Hearing/Status Conference has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Hearing.

Please Note:  You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

**APPENDIX**

Exhibits:

1. Letter from Bertorini
2. Ms. Gueye's affidavit
3. Medical records submitted by Federal Express
4. New Hire Orientation Class Form
5. Denial Letter from Sedgwick James
6. Medical records submitted by Ms. Gueye
7. Initial C-42 form
8. Second C-42 form
9. Return to work form provided by PCS
10. Accident Report
11. Wage Statement
12. Mileage Statement
13. First Report of Injury

Technical Record:

7

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Federal Express' Position Statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Benefits was sent to the following recipients by the following methods of service on this the 26 th day of January 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Kine Gueye | X | | X | 10407 Redmond Drive Cordova, TN 38016 Kinegueye7@gmail.com |
| Jonathan May | | | X | gtaylor@lewisthomason.com |

Penny Shrum, Clerk of Court
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

8